In re Connie Paulette MELE, Debtor.

Connie Paulette Mele, Plaintiff,

v.

Bank of America Home Loans (BAC), Defendant.

Bankruptcy No. 10–82567.
Adversary No. 12–5031–BEM.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 10, 2013.

Connie Mele, Lilburn, GA, pro se.

Jonathan S. Adams, McCalla Raymer, LLC, Roswell, GA, Kimberly D. Rayborn, McCalla Raymer LLC, Atlanta, GA, for Defendant.

### *MEMORANDUM OPINION*

BARBARA ELLIS–MONRO, Bankruptcy Judge.

A trial was held in this adversary proceeding on November 15, 2012. Plaintiff Connie Paulette Mele ("Plaintiff") asserts that Bank of America Home Loans, N.A. ("Defendant") violated the discharge injunction of 11 U.S.C. § 524 when it sent her certain correspondence and contacted her telephonically after entry of her Chapter 7 discharge. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and within this Court's subject matter jurisdiction.

After carefully considering the pleadings, the evidence presented and the applicable authorities, the Court concludes that no violation of the discharge injunction occurred and enters the following findings of fact and conclusions of law in accordance with Fed. R. of Bankr.P. 7052.

## I. PROCEDURAL HISTORY

Plaintiff filed a Chapter 13 bankruptcy case, case number 10–82567, on August 2, 2010 (the "Case"). Thereafter, Plaintiff converted the Case to one under Chapter 7 of the Bankruptcy Code. (Doc. No. 13). The Chapter 7 Trustee filed a Report of No Distribution and on January 4, 2011, the Court entered an order discharging Plaintiff and closing the Case. (Doc. No. 35).

On December 23, 2011, Plaintiff filed a Motion to Reopen the Case (Doc. No. 41), and on January 17, 2012, Plaintiff filed this adversary proceeding. (Doc. No. 37). Plaintiff's original complaint was filed against Rubin, Lublin, Suarez, Suerrano LLC, Molly Sutter, U.S. Bank N.A., and Bank of America, N.A. After a hearing that began on January 19, 2012, and concluded on January 23, 2012, Judge Brizendine[1] determined that Plaintiff could reopen the Case, but could only pursue "the portion of the complaint alleging a violation of the discharge injunction" against Defendant. (Main Case Doc. No. 43; AP

Doc. No. 3). The Court dismissed all other defendants. (Main Case Doc. No. 43; AP Doc. No. 3). Thereafter, Defendant filed a Motion to Dismiss (AP Doc. No. 40) that was denied on October 9, 2012. (AP Doc. No. 79).

## II. FINDINGS OF FACT

Plaintiff filed bankruptcy to stop the foreclosure of her interest in her home and receive a "fresh start." Plaintiff was not current on her mortgage when she filed the Case but she wanted to retain her home, which she thought she could do by converting the Case to Chapter 7. At the time she filed bankruptcy, Plaintiff had made only three, mortgage payments. Plaintiff did not reaffirm the debt secured by her home during the course of the bankruptcy. Plaintiff continues to reside at the property which is the subject of the mortgage held by Defendant[2], and has not made any payments on the mortgage since she filed bankruptcy in August, 2010. Plaintiff does not believe that any money is owed for the property because of her discharge and/or some imperfection in Defendant's rights so that foreclosure "wasn't right" in her case. The loan secured by Plaintiff's house is fully insured by the Federal Housing Administration ("FHA"). FHA rules require that certain information be provided to borrowers prior to FHA insured loans entering foreclosure.

---

**1.** On June 26, 2012, this proceeding was transferred to Judge Ellis–Monro for all further proceedings.

**2.** Schedule D, Creditors Holding Secured Claims, filed in the Case [Main Case Doc. No. 9] lists BAC Home Loans as the creditor holding the first mortgage against the property and does not list the debt as disputed. In addition, Defendant's Exhibit 1 includes a promissory noted dated July 1, 2009, signed by Plaintiff payable to Gold Star Mortgage Corp. (Gold Star) and endorsed in blank and a security deed dated July 1, 2009, and assigned to BAC Home Loans Servicing, LP.

Plaintiff stated at trial that Defendant was not the secured creditor and could not foreclose, that Gold Star was the secured creditor, but that Gold Star may not have a valid lien. The Court assumes for purposes of this matter that Defendant is the holder of the mortgage on Plaintiff's property, but makes no findings or conclusions with respect to the validity, extent or .priority of the lien asserted by Defendant. In accordance with the January 24, 2012, Orders (Main Case Doc. No. 43; AP Doc. No. 3) limits this order to determining whether a violation of § 524(a) occurred.

The internal call log, which captures all calls made by and to Defendant, shows that Defendant did not make any telephone calls to the Plaintiff after August 2, 2010, but that Plaintiff called Defendant six times on November 8, 2011, and November 14, 2011. (Defendant's Exhibit 17). Plaintiff made these calls to Defendant to investigate a foreclosure notice Plaintiff had received.

Defendant did send Plaintiff fifteen letters or forms after entry of her discharge. All correspondence identified by Plaintiff[3] was sent to Plaintiff, by name, at the property address during the period of January 28, 2011 through June 21, 2012. Five of the fifteen pieces of correspondence provided information required by FHA rules.

The correspondence can be divided into four general types: (1) informational, (2) FHA information, (3) responses, and (4) statements. Each type of correspondence is discussed below.

### (1) Informational

Plaintiff received four informational forms from Defendant. The first is dated March 13, 2011. (Defendant's Exhibit 2). The form is titled, "FOR INFORMATIONAL PURPOSES" and is in bold and capitalized. The first two sentences of the letter thank the recipient for being a "valued customer" and state that "[w]e would like to make you aware of important home loan fee information and required fee disclosures." There is a second bold capitalized heading that states, "FEES ASSOCIATED WITH SPECIAL SERVICES AND LOAN PAYOFF" followed by the sentence, "The following fees are the maximum fees that may apply if you request certain special services regarding your mortgage or home equity loan." The form

then details the fees for sending a verification of a mortgage, a faxed payoff statement and an expedited payoff service. The letter further details fees that may be incurred when paying off or refinancing a loan.

The second informational form is not dated but provides information regarding a change in the servicer for Plaintiff's loan effective on July 1, 2011. (Defendant's Exhibit 3). The first line of the form is capitalized and in bold and states "IMPORTANT MESSAGE ABOUT YOUR LOAN." The form then states, "[w]e want to let you know that effective July 1, 2011, the servicing of home loans by our subsidiary—BAC Home Loans Servicing, LP, will transfer to our parent company—Bank of America, N.A." The letter next states, again in bold capital letters, "WHAT THIS MEANS FOR YOU," and describes to whom checks should be made payable after July 1, 2011, that Defendant will notify insurance carriers of the change in servicer and that no changes will be made to the loan account number or the terms of the loan. On the second page of the form in a section titled "Legal Notices," the form advises the recipient that a "RESPA Servicing Transfer Notice and Notice to borrowers who are debtors in a current bankruptcy proceeding or approved bankruptcy plan" are included with the letter. The enclosures include a page titled, in bold capital letters, "IMPORTANT NOTICE TO BORROWERS WHO ARE DEBTORS IN A CURRENT BANKRUPTCY PROCEEDING OR WHO HAVE RECEIVED A DISCHARGE CONCERNING THEIR HOME LOAN." On this page a paragraph entitled "[w]e are aware of your bankruptcy rights"

---

**3.** Plaintiff and Defendant identified the same fifteen pieces of correspondence in the exhibits submitted to the Court prior to Trial. At trial Defendant's exhibits were admitted into evidence.

states, "[t]his package of information, including any legally required notices, is to inform you about the transfer of the servicing of your mortgage loan.... If you are currently in a bankruptcy proceeding, or have received a discharge of the home loan debt, this package of information is for informational purposes only. This package of information is not intended as an action to recover or enforce a claim, nor a demand for the payment of a debt...."

The third informational form is also undated and states, in bold capital letters, "IMPORTANT MESSAGE ABOUT YOUR HOME LOAN." (Defendant's Exhibit 4). The form states, "[w]e recently notified you that effective July 1, 2011, the *servicing* of your home loan account noted above transferred from our subsidiary—BAC home Loans Servicing, LP, to our parent company, Bank of America, N.A. Based upon our records ... the *ownership* of your home loan account also transferred...." (emphasis in original). The form explains the difference between a servicer and an owner in a section, in bold capital letters, entitled "DIFFERENCE BETWEEN A SERVICER AND AN OWNER." The form also includes a "LEGAL NOTICE" section indicating that "[n]o action is required on your part in response to this notice ..." and includes a copy of a "Notice of Assignment, Sale, or Transfer of Ownership of Mortgage Loan." The enclosed Notice of Assignment recites that the notice is sent as required by Federal law and that "You should continue to send your loan payments as directed by your servicer—do not send your loan payments to our mailing address."

The fourth informational form sent to Plaintiff is undated but references the previous notice sent advising Plaintiff that the servicer on her loan had changed. (Defendant's Exhibit 5). The initial bold title on the letter states "IMPORTANT MES-SAGE ABOUT YOUR HOME LOAN." The form again reminds the customer about the servicing transfer and then provides "Important Additional Information" that states that under the Fair Debt Collections Practices Act and certain state laws Defendant is considered a debt collector such that Defendant is sending Plaintiff a "Fair Debt Collection Practices Act Notice containing important information about your loan and your rights under applicable federal and state law." At the bottom of the page, in bold the letter states, "Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose. Notwithstanding the foregoing, if you are currently in a bankruptcy proceeding or have received a discharge of the debt referenced above, this notice is for informational purposes only and is not an attempt to collect a debt. If you are represented by an attorney, please provide this notice to your attorney." The next page of the form gives the Plaintiff the debt validation notice required by the Fair Debt Collection Practices Act including an amount owed and includes the following:

"... if you are currently in a bankruptcy proceeding or have received a discharge of the home loan debt referenced above, this statement is being furnished for informational purposes only. It should not be construed as an attempt to collect against you personally, Bank of America, N.A. will take no steps to collect from you personally or against the property securing this loan while the bankruptcy's automatic stay remains in effect. In the future, you may receive a discharge in bankruptcy. Under those circumstances, by operation of law, Bank of America, N.A. will retain the ability to enforce its rights against the property securing this loan should there be a

default under the terms of your loan documents...."

*See* 15 U.S.C. §§ 1692–1692o.

### (2) FHA Information

Defendant sent Plaintiff two FHA forms stating that they were in response to Plaintiff's "request to prepay in full your FHA insured mortgage which Bank of America is servicing." The first letter is dated October 17, 2011, and includes a reference to a request made on that same date. (Defendant's Exhibit 6). The second form responds to a December 28, 2011 request. (Defendant's Exhibit 11). The top right corner of each of these forms states, "PREPAYMENT REGULATORY AMENDMENT NOTICE FOR FHA INSURED MORTGAGES." The forms also provide instructions on repaying a mortgage and the effect the date of payment can have on the interest owing.

Plaintiff alleges that she did not request information on October 17, 2011, or December 28, 2011. Defendant's call log reflects that Plaintiff did not call Defendant on either of these two dates, thus, if a request was made it would have to have been in writing. No written request has been produced. Given the dates of these two response letters and the dates of the Payoff Demand Statements dated October 14, 2011, and December 27, 2011 (Exhibits 7 and 10), which include boilerplate language stating that the payoff demand statement is being sent at the recipient's request the logical inference to be drawn is that these "response" letters were automatically generated when the FHA required foreclosure notices were sent. The Court does not believe Plaintiff requested the Payoff Demand Statements and the evidence presented was that those documents are sent when an FHA insured loan is in foreclosure.

The third FHA form sent to Plaintiff is dated June 21, 2012. (Defendant's Exhibit 16). This form notes the FHA number, the account number and property address and is titled, in bold capital letters, "BORROWER INFORMATION PACKET COVER LETTER." In the second section of the cover letter, a section titled, "IMPORTANT MESSAGE ABOUT YOUR LOAN," the letter states that the Debtor's loan is past due in the amount of $46,809.43, for the months of November 2009 to June 2012. The form states further that, "[i]t is important that we receive full payment as soon as possible so you can avoid foreclosure on your home. Foreclosure is the legal process lenders use to take ownership of a property if payments are not made on the loan." The second page of the letter states in bold capital letters,

"IMPORTANT NOTICE: THIS NOTICE IS BEING FURNISHED FOR INFORMATIONAL PURPOSES ONLY AND SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT AGAINST YOU PERSONALLY. While your obligation to Bank of America, N.A., may have been discharged, by operation of law, Bank of America, N.A., has retained the ability to enforce its rights against the property ..."

Included with this letter is a three page document titled "Federal Housing Administration Save Your Home Tips to Avoid Foreclosure," which provides information about certain programs that may be available to modify home loans or otherwise address a potential foreclosure.

### (3) Responses

Five pieces of correspondence state that they were sent in response to inquiries from Plaintiff, a fact Plaintiff did not dispute. (Exhibits 3, 9, 12, 14 and 15). Three of these five items are identical

forms and were sent on November 11, 2011, December 9, 2011, and January 11, 2012. (Defendant's Exhibits 8, 9, and 12). Each of these documents state in bold capital letters, "YOUR REQUEST HAS BEEN RECEIVED," followed by, "[t]hank you for your recent inquiry about your home loan. This letter confirms Bank of America, N.A. has received your correspondence." The letters go on to explain that Bank of America is in the process of obtaining documentation and information to reply to the borrower's correspondence. The fourth response document is a letter dated March 29, 2012, from Jennifer Hurst, Litigation Specialist. (Defendant's Exhibit 14). The letter acknowledges receipt of Plaintiff's correspondence dated May 11, 2012, identifies the current servicer for and owner of Plaintiff's loan and states "the remaining concerns addressed in your correspondence require further detailed analysis. We will respond to your request after we complete our investigation. If you have concerns or questions regarding the foreclosure, please contact BFS Customer Escalations and Research Unit...." The final response is a letter dated May 29, 2012, and is from Terry Nall, Litigation Specialist. (Defendant's Exhibit 15). This letter was sent via overnight delivery and acknowledges receipt of a letter dated May 11, 2012, "wherein [Plaintiff gave] notice to rescind the above referenced mortgage loan transaction pursuant to the federal Truth In Lending Act and Regulation Z (collectively, TILA). According to this letter Defendant reviewed Plaintiff's claim, denied the same and planned to respond to the remainder of Plaintiff's correspondence in a separate letter.

### (4) Statements

On or about January 28, 2011, Defendant sent Plaintiff an account statement containing a Home Loan Summary with a principal balance as of January 28, 2011. (Defendants's Exhibit 13) (the "Account Statement"). The Account statement looks like a monthly payment coupon except that at the top of the statement in bold capital letters is the statement, "FOR INFORMATION PURPOSES." The second heading states, "IMPORTANT NOTICE" and is followed by, "[i]f you do not want us to send your monthly statements in the future, please contact us ... This statement is being furnished for informational purposes only and should not be construed as an attempt to collect against you personally. While your obligation to BAC Home Loans Servicing, LP may be discharged by operation of law, BAC Home Loans Servicing, LP has retained the ability to enforce its rights against the property securing this loan should there be a default." The Account Statement includes the principal balance of the loan, account number, a date of February 1, 2011, an amount of $1,462.94 and payment instructions.

Two additional statements were sent to Plaintiff, one dated October 14, 2011, and the second dated December 27, 2011 (Defendant's Exhibits 7 and 10) (the "Payoff Demand Statements"). The Payoff Demand Statements are identical in form and include the words "Payoff Demand Statement" in the upper-right corner of the first page. The Payoff Demand Statements include a "Statement Void After" date, a statement date, loan number, FHA Case number, name and property address. Approximately one third of the way down the first page, in the center in bold, are the statements, "This loan is in Foreclosure" and "[t]he expiration of this demand is the sooner of the above Void After date or the foreclosure sale date." The next section of the page is titled "Payoff Calculation," which includes a "Total Amount Required to Release Lien (As of [date])" and a

"Total Amount Due." The final section on the first page is a section titled "Payoff Instructions" providing instructions for where and how payoffs may be made. The second page of each of the Payoff Demand Statements includes "Escrow Account Information," "Important Instructions On Payment Of Shortage," "Automatic Payoff Updates," "Payoff Overages," "Bankruptcy Discharge" and "Additional Information." The "BANKRUPTCY DISCHARGE" section states, "[i]f you have received a discharge of this debt in a bankruptcy, you have no personal obligation to repay this debt. However, the lender may still foreclose on your property if the debt is not paid as required by the loan documents. This payoff statement is provided at your request and for your convenience. This is not an attempt to collect a debt that has been discharged, nor a demand for payment."

Ms. Cacho, a paralegal employed by Defendant who works in the areas of contested foreclosure and bankruptcy litigation, testified that Chapter 7 debtors frequently enter reaffirmation agreements or send in payments after discharge in order to keep their homes. She stated further that Bank of America sends the Account Statement-type of statement to confirm the amount the debtor owes because the amounts change based on escrow funds and payment fluctuations. Ms. Cacho stated further that the Payoff Demand Statements are required by FHA rules to be sent prior to foreclosure and are also intended to comply with applicable state law.

Receiving these forms and letters caused Plaintiff a great deal of stress which caused her to stop eating, lose weight, have general anxiety issues and become reclusive. Plaintiff testified that she was afraid to answer the telephone or get her mail because of the "excessive"

and "aggressive" contact by Defendant. Plaintiff also testified that people drove by her house and were in her yard asking if she "was still there." Conversely, Plaintiff testified that the notices related to foreclosure didn't really "bother her" or cause her much stress because she knew that there was no debt on her property. Rather, Plaintiff said it was the cumulative effect of all of the correspondence that caused her stress and affected her health.

## III. CONCLUSIONS OF LAW

Plaintiff argues that each of the fifteen documents Defendant sent to her violated her discharge. She argues that addressing each of these letters to her at the property address, including the Fair Debt "mini miranda" and including "words of collection," such as "prepayment" and "loan," causes the correspondence to attempt to collect a debt against her personally. Plaintiff seeks approximately $2.4 million in damages for the alleged violations of the discharge injunction of 11 U.S.C. § 524.

Defendant argues that none of the letters seek to personally collect a discharged debt and that each of the letters is informational in nature and only relates to collection of the debt owed to Defendant through exercise of Defendant's *in rem* rights. Defendant seeks dismissal with prejudice and recovery of attorney's fees.

### A. Standards for Establishing a Violation of The Discharge Injunction

██ Section 524(a)(2) states:

A discharge in a case under this title—
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a **personal liability** of the debt-

or, whether or not discharge of such debt is waived;

11 U.S.C. § 524(a)(2) (emphasis added). "Section 524 ... provides the debtor with a post-discharge injunction against collection of debts discharged in bankruptcy, and thus embodies the 'fresh start' concept...." *Hardy v. U.S. (In re Hardy),* 97 F.3d 1384, 1388–89 (11th Cir.1996). The fresh start notwithstanding, a Chapter 7 discharge does not avoid or otherwise affect a lien against property of the debtor. *See Long v. Bullard,* 117 U.S. 617, 620–21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886) (holding that a secured creditor can ignore a bankruptcy proceeding because it can always look to the lien to satisfy its claim); *See also, Universal American Mortgage Company v. Bateman,* 331 F.3d 821, 827 (11th Cir.2003) (stating that a secured creditor need not do anything during bankruptcy because it will always be able to look to the underlying collateral to satisfy its lien); *In re Jennings,* 454 B.R. 252, 255 (Bankr.N.D.Ga.2011) (quoting *Johnson v. Home State Bank,* 501 U.S. 78, 83, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) which states "a discharge extinguishes only 'the personal liability of the debtor.'... Codifying the rule in *Long v. Bullard,* the Code provides that a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy."). As one court succinctly stated, "while [the lender] has the right to enforce its mortgage against the Property after discharge, it has no right to demand payment from the Debtor on the discharged debt." *In re Brown,* 481 B.R. 351, 358 (Bankr.W.D.Pa.2012).

To establish a violation of 11 U.S.C. § 524, Plaintiff must prove that the Defendant willfully violated the discharge injunction. The test in the Eleventh Circuit for determining willfulness is: (1) Defendant knew that the stay was in place, and (2) Defendant intended the actions that violated the stay. *In re Hardy* at 1390. In *Hardy,* the Court noted that Plaintiff would have to prove that the defendant intended the actions that violated the stay, without regard to "the subjective beliefs of the alleged contemnors in complying with the order." *Id.* Other courts have stated that, "a creditor acts willfully when it, with knowledge of a bankruptcy petition, acts deliberately in a manner that violates the stay, even if his actions are not intentionally meant to violate the stay." *In re Ashley,* 2012 WL 3962669, *3, 2012 Bankr.LEXIS 4105, *8 (Bankr.N.D.Ala. 2012). The standard for willfulness is the same for violations of the automatic stay and for violations of the discharge injunction. *In re Hardy* at 1390. It is widely accepted that, "Bankruptcy Courts may invoke their statutory contempt power under § 105 to provide a remedy for willful violations of the discharge injunction." *In re Wallace,* 2011 WL 1335822, 2011 Bankr.LEXIS 1168 (Bankr.M.D.Fla.2011) (*citing In re Wynne,* 422 B.R. 763, 768 (Bankr.M.D.Fla.2010)); *See also, In re Hardy* at 1389–1390. Whether a finding of statutory contempt pursuant to § 105 must be based on clear and convincing evidence or the preponderance of the evidence is not clear. *See Wallace,* at *3–4, 2011 Bankr.LEXIS 1168, at *10–11 (noting divergence in case law regarding appropriate standard of proof). Under either standard of proof the Court's decision in this case would be the same so that the Court need not decide the appropriate standard in this case.

Defendant does not dispute that it had knowledge of the Plaintiff's discharge or that it intended to send the correspondence Plaintiff complains of. Thus, the issue remaining for the Court to decide is whether the specific forms, letters and other contact alleged by Plaintiff constitute an attempt to collect a debt as a personal liability of Plaintiff.

■ Whether the letters or forms violated the discharge injunction is a particularly fact-intensive inquiry because not every communication from a creditor following the conclusion of a Chapter 7 case violates the discharge injunction. *In re Henry*, 266 B.R. 457, 473 (Bankr.C.D.Cal. 2001) (stating communication from a creditor might be appropriate to "facilitate the making of monthly post petition payments by the debtor"); *In re Wallace*, at *5–6, 2011 Bankr.LEXIS 1168, at *15–16 (stating in dicta, "there may be circumstances where a debtor who has been discharged from a loan obligation needs to know the amounts due."). Indeed, some post discharge communication is necessary and should be encouraged, especially in a case such as this in which a debtor has indicated she intends to keep her home. *See In re Schatz*, 452 B.R. 544, 549–50 (Bankr. M.D.Pa.2011) (explaining that "secured creditors should be encouraged to send informational statements to debtors in bankruptcy who may intend to keep the secured property").

In contrast, if calls and letters are sent relentlessly, the cumulative effect is likely to amount to collection of a debt in violation of § 524. *See In re Wallace* (wherein a combination of billing statements that included number of payments missed, amount of delinquency and amount due at next payment and numerous aggressive telephone calls indicated attempt to collect the debt in violation of § 524). In such a situation, a disclaimer may not be sufficient to avoid a finding of contempt. *Id.;* *cf. In re Schatz* at 549–50 (explaining that a "conspicuously included disclaimer" placed in the middle of the page was one factor that swayed the court in finding that the letter was not an attempt to collect a debt).

In *In re Brown*, 481 B.R. 351 (Bankr. W.D.Pa.2012), a case with facts quite similar to those presented here, the Court considered whether telephone calls, notices and statements, as well as the lender's agent coming to the debtor's door and asking that the debtor contact the lender, violated § 524. The Court reviewed each contact and considered whether a contact was a "demand for payment of a discharged debt." *Id.* at 358. In concluding that the telephone calls debtor complained of did not constitute a demand, the court relied upon debtor's testimony that the calls were to offer assistance to avoid foreclosure or to obtain a loan modification. Thus, the Court found that the calls were not threatening or in the nature of collection calls but were made to offer assistance. Similarly, the Court concluded that generic informational letters and notices informing debtor of a change in loan servicer, even though the notices did include a payoff amount, were not demands for payment. In contrast to these informational letters, the debtor received several mortgage statements that included the amount of payment, a due date, a late charge if not received by a certain date, a past due amount and notably, did not include any disclaimers. The Court concluded that these statements constituted attempts to collect a discharged debt. Similarly, this Court will review each of the forms and letters individually and then assess the overall effect of the documents to determine if Defendant was seeking to collect a debt from Plaintiff personally.

## B. Analysis

### 1. Phone Calls

The evidence shows that Plaintiff initiated several calls to Defendant during November, 2011. There is no evidence of the specifics of the calls Plaintiff made, only that she was investigating the foreclosure notice she received. The evidence further shows that Defendant did not initiate any calls to Plaintiff and Plaintiff has failed to

prove that Defendant sought to collect a debt from her personally via the telephone.

## 2. Correspondence

■ The informational documents, Exhibits 2–4, 6 and 11, do not include any amounts owed or any demands for payment, rather each of these documents provide information such as fees charged for certain information, the identity of the servicer and owner of the loan and instructions for making a payoff. Exhibits 5 and 16 differ from the other informational correspondence in that they both include amounts due. Exhibit 5 contains the Fair Debt Collection debt validation statement which necessarily includes an amount owed. Exhibit 16 contains a statement of the months for which a payment is due and includes a package of information intended to assist with avoiding foreclosure. The Court finds that the overall tenor of Exhibit 16 is informational. Exhibit 5 includes two disclaimers and provides a legally required notice. Thus, the Court concludes that none of the informational documents, Exhibits 2–6, 11 and 16, seek to collect a debt personally from Plaintiff.

■ Similarly, the Responses, Exhibits 8, 9, 12, 14 and 15, do not seek to collect a debt. Each of these documents is responsive to an inquiry from Plaintiff, do not contain any amounts owed or demands for payment and the Court finds that none of the Responses, Exhibits 8, 9, 12, 14 and 15, seek to collect a debt personally from Plaintiff.

■ The Account Statement sent on January 28, 2011, includes the statement "FOR INFORMATION PURPOSES" prominently placed at the top of the first page. In addition the Account Statement includes a disclaimer stating that, "[t]his statement is being furnished for informational purposes only and should not be construed as an attempt to collect against you personally. While your obligation to BAC Home Loans Servicing, LP may be discharged by operation of law, BAC Home Loans Servicing, LP has retained the ability to enforce its rights against the property securing this loan should there be a default." The Account Statement also contains a principal balance, account number, payment amount, due date and payment instructions. This statement was sent to Plaintiff a few weeks after the entry of her discharge and is consistent with a notice sent to inform a debtor who wishes to retain her property. Defendant's representative testified that this type of statement is meant to educate a former debtor regarding her loan payments because the amount may have changed and because Plaintiff had declared her intention to keep her home. The Court finds that the Account Statement sought to provide information to Plaintiff, post discharge, to facilitate retention of her home and was not an attempt to collect a debt from Plaintiff personally.

■ Unlike the Account Statement, the Payoff Demand Statements include the word "demand" in their titles, a Payoff Calculation Section that includes a "Total Amount Due" and a "Total Amount Required to Release Lien." The second page of each of the Payoff Demand Statements contains a specific notice that if the recipient has received a discharge in bankruptcy there is no "personal obligation to repay this debt" but that the "lender may still foreclose." The Payoff Demand Statement does not demand payment, rather it identifies the amount necessary for release of the lien on Plaintiff's property and specifically states that if the recipient received a discharge then there is "no personal obligation to repay this debt. However, the lender may still foreclose."

Plaintiff argues that the forms and letters include disclaimers and "for informa-

tion" language in one paragraph and in the next paragraph "words of collection" such as demand and loan that cause confusion. With respect to the Payoff Demand Statements, the Court agrees that the disclaimer language could be more prominently placed, however, in order to pursue *in rem* rights, rights that are expressly preserved and recognized in § 524, Defendant is required to provide certain notices and information to Plaintiff. In addition to the information and notice Defendant also included a specific disclaimer and referenced lien release. Defendant at no time referenced any personal liability on behalf of Plaintiff. Thus, the Payoff Demand Statements are distinguishable from the statements in *Brown* and the Court concludes that the Payoff Demand Statements do not attempt to collect a debt in violation of § 524.

 None of the fifteen documents sent to Plaintiff, on an individual basis, seek to collect a debt personally from Plaintiff. However, the collective effect of these fifteen items must be considered as well. The fifteen documents sent to Plaintiff were sent over an eighteen month period. During that period, Defendant did not make any telephone calls to Plaintiff. Two-thirds of the documents sent to Plaintiff merely provide information or respond to Plaintiff's request for information. The Account Statement seeks to facilitate retention of Plaintiff's home and the Payoff Demand Statements provide required information prior to exercise of *in rem* rights. The informational notices associated with the Payoff Demand Statements (Exhibits 6 and 11) provide information to facilitate payoff if one is made (Exhibits 6 and 11). The Court finds that the entire correspondence from Defendant to Plaintiff did not constitute an attempt to collect a debt personally from Plaintiff.

### 3. Additional Contact

 In addition to alleging that telephone calls were made and correspondence was sent that violated the discharge injunction, Plaintiff testified that people drove by her house and entered her yard asking whether she "was still in there". Beyond this general statement, no additional evidence providing the specifics of these incidents was presented. This contact is similar to that in *Brown* where an agent of the lender made personal contact with debtor but did not make a payment demand. Inquiring whether Plaintiff was still in the house is entirely consistent with exercise of *in rem* rights and not with demand for payment. Thus, the Court finds that this contact did not violate § 524.

## IV. CONCLUSION

 The receipt of correspondence from Defendant is clearly distressing to Plaintiff; this is due to Plaintiff's misunderstanding of the effect of her discharge and its impact on the obligation secured by her home, and not due to any violation of the discharge injunction by Defendant. Because Plaintiff prosecuted this action, an action that she believes is meritorious, in good faith, Defendant's request for costs and dismissal with prejudice is denied. A separate judgment will be entered.

IT IS SO ORDERED.