IN RE: Carlos H. HENRIQUEZ and Maria L. Henriquez, Debtors.

Carlos H. Henriquez and Maria L. Henriquez, Plaintiffs,

v.

Green Tree Servicing, LLC, Defendant.

Case No.: 10–21876–JRS
Adversary Proceeding Case
No.: 14–2126–JRS

United States Bankruptcy Court,
N.D. Georgia, Gainesville Division.

Signed August 31, 2015

Filed September 1, 2015

Carlos H. Henriquez, Gainesville, GA, pro se.

Maria L. Henriquez, Gainesville, GA, pro se.

Thomas S. Kenney, John A. Medina, Kenney & Medina, P.C., Suwanee, GA, for Defendant.

## ORDER

James R. Sacca, U.S. Bankruptcy Court Judge

Presently before the Court are the parties' cross-motions for summary judgment regarding whether the Defendant violated the discharge injunction. (Docs. 16 & 17); the Plaintiffs' motion to strike the Defendant's response to their motion for summary judgment; and (Doc. 27) the Defendant's motions to strike portions of the Plaintiffs' affidavits. (Docs. 24 & 25).

### Facts

In May 2005, the Plaintiffs obtained a mortgage from Bank of America secured by real property (the "Loan") located in Sterling, Massachusetts (the "Property"). (Def.'s Statement of Undisputed Material Facts ("Def.'s SOMF") ¶ 1; Pls.' Statement of Material Facts ("Pls.' SOMF" ¶ 1). The Plaintiffs allege that sometime in early 2010 they moved from the Property to Georgia. (Pls.' SOMF ¶ 2).

On April 26, 2010, the Plaintiffs filed for chapter 7 bankruptcy relief in this Court

and received a discharge, including a discharge of their personal liability on the Loan, on August 10, 2010. The Plaintiffs indicated on the Chapter 7 Individual Debtor's Statement of Intention form that they intended to retain the property. There is no evidence that the debt was reaffirmed.

At some point after their discharge, the Plaintiffs contend that they decided to surrender the Property and informed Bank of America of their decision.[1] (Pls.' SOMF ¶ 10). In 2013, the Loan was transferred to EverBank. (Pls.' Mot. for Summ. J. Ex. 7). In May 2014 the Defendant began servicing the Loan on behalf of EverBank. (Compl. Ex. 1; Def.'s SOMF ¶ 2; Pls.' SOMF ¶ 26). Shortly after it began servicing the Loan, on May 27, 2014, the Defendant conducted a foreclosure sale of the Property. (Def.'s SOMF ¶ 3; Pls.' SOMF ¶ 27). The foreclosure deed was recorded on October 7, 2014. (Melissa Barry Aff. Ex. D). The Defendant also sent various written communications to the Plaintiffs, received phone calls from the Plaintiffs, and reported information to the credit bureaus, all of which the Plaintiffs claim are violations of the discharge injunction.

Overall, the Plaintiffs presented seven written communications from the Defendant that they allege violated the discharge injunction. Each was sent to the Plaintiffs, not at the Massachusetts Property, but at their address in Georgia. The written communications the Plaintiffs received from the Defendant fall into two different categories: (1) informational letters (Def.'s SOMF ¶¶ 4, 6–7, 9; Compl. Exs. 1, 3–4, 9); and (2) letters notifying the Plaintiffs that the Defendant will and eventually did place insurance on the Property and that the Plaintiffs are responsible for the cost. (Def.'s SOMF ¶¶ 5, 8; Compl. Exs. 2, 8). The Plaintiffs also attached as exhibits various documents related to the foreclosure of the Property, but do not allege that those are a violation of the discharge injunction. (Compl. Exs. 5, 6, 7, 11; Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J. 24–25, Doc. 26).

The Plaintiffs reopened their bankruptcy case in June 2014 and, thereafter, filed this adversary proceeding contending that the Defendant violated the discharge injunction and seeking sanctions for contempt due to the various violations.[2] The Plaintiffs seek compensatory damages for the time they've expended, damages for emotional distress, and punitive damages. (Compl.20). The Defendant asserts that none of its actions violated the discharge injunction. The Plaintiffs and Defendant have now filed cross-motions for summary judgment. In addition, Plaintiffs have filed a motion seeking to strike the Defendant's response to their motion for summary judgment, and the Defendant filed two motions to strike certain portions of the Plaintiffs' affidavits. All of these motions are now before the Court.

### Summary Judgment Standard

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to

1. The Plaintiffs allege that they informed Bank of America of their intent to surrender the Property in November or December 2011. (Pls.' SOMF ¶ 10).

2. In *In re McLean*, 794 F.3d 1313, 1325–26 (11th Cir.2015), the Eleventh Circuit concluded that the proper form for a motion for contempt because of a violation of the discharge injunction is a contested matter, not an adversary proceeding. However, because such a defect in the form of an action is not jurisdictional and does not result in reversible error, especially where the defending party fails to object, the Court will dispose of this matter in the present adversary proceeding. *Id.*

judgment as a matter of law. Fed. R. Civ. P. 56. The substantive law applicable to the case determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual issue is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Id.* The Court "should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his favor." *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir.1991) (citations and punctuation omitted). The court may not weigh conflicting evidence or make credibility determinations. *Hairston v. Gainesville Sun Publ'g. Co.*, 9 F.3d 913, 919 (11th Cir.1993), *reh'g denied*, 16 F.3d 1233 (1994) (en banc).

For issues upon which the moving party bears the burden of proof at trial, he must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of his claim on that legal issue. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). He must support his motion with credible evidence that would entitle him to a directed verdict if not controverted at trial. *Id.* If the moving party makes such a showing, he is entitled to summary judgment unless the non-moving party comes forward with significant, probative evidence demonstrating the existence of an issue of material fact. *Id.*

### Discussion

#### A. Motions to Strike

The Plaintiffs ask the Court to strike the Defendant's response to their motion for summary judgment as untimely. The Plaintiffs' motion for summary judgment was filed on May 8, 2015. The Defendant filed its response on June 1, 2015. Pursuant to BLR 7007–1(c), a party has twenty-one days to respond to a motion for summary judgment and its failure to respond to such a motion indicates no opposition. The Defendant argues its response was timely because Fed. R. Bankr.P. 9006(f) allows for an extra three days for a response under certain conditions. June 1, 2015 is three days after the twenty-one day response time in this case.[3] The Court will not consider the Defendant's response untimely and will not strike it. Even if the response was untimely, the Court would allow the response as such alleged untimeliness was *de minimis* and did not prejudice the Plaintiffs. Even if the Court did strike the Defendant's response, the Defendant still filed a cross-motion for summary judgment clearly indicating that it opposes the Plaintiffs' motion for summary judgment and making the same arguments as in the response it filed. In addition, even if a motion for summary is unopposed, the Court must still consider the motion on its merits; it will not be granted outright. The Plaintiffs must be entitled to judgment as a matter of law in order to be entitled to summary judgment, which the Court concludes the Plaintiffs are not.

The Defendant filed two motions to strike portions of the Plaintiffs affidavits for various reasons. (Docs. 24 & 25). Because the Court concludes that the Defendant is entitled to summary judgment for the reasons set forth below, it need not rule on these motions.

#### B. Cross–Motions for Summary Judgment

■ Section 524(a)(2) provides that a discharge in bankruptcy "operates as an injunction against the commencement or continuation of an action . . . or an act, to

---

**3.** The Court also notes that the docket in this case states that the responses to the motion for summary judgment were not due until June 1, 2015.

collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). The discharge injunction is an embodiment of the "fresh start" bankruptcy relief gives to debtors. "Section 524 is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it" *In re Mc-Lean,* 794 F.3d at 1321 (11th Cir.2015). (citations omitted) (internal quotation marks omitted). Therefore, in the Eleventh Circuit, "the test for whether a creditor violates the discharge injunction under 11 U.S.C. § 524(a)(2) is whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt" even if such means is indirect. *In re McLean,* 794 F.3d at 1321–22.

■ Although a discharge eliminates the debtor's personal liability on a secured debt, the discharge does not eliminate a secured creditor's lien against the property. *In re Mele,* 486 B.R. 546, 555 (Bankr. N.D.Ga.2013). Thus a secured creditor may still enforce its lien against the debtor's property after a discharge, but may not demand payment from the debtor personally. *Id.* "The discharge injunction does not prohibit every communication between a creditor and debtor—only those designed to collect, recover or offset any such debt as a personal liability of the debtor." *In re Gill,* 529 B.R. 31, 37 (Bankr.W.D.N.Y.2015) (citations omitted) (internal quotation marks omitted). Determining whether communications with a debtor violate the discharge injunction is a "particularly fact-intensive inquiry because not every communication from a creditor following the conclusion of a Chapter 7 case violates the discharge injunction." *Id.* at 556.

■ Section 524 does not specifically authorize courts to provide monetary relief; therefore, in considering whether sanctions are appropriate, bankruptcy courts rely on their statutory contempt powers under § 105. *In re Hardy,* 97 F.3d at 1389. A party may be in contempt under § 105 if it willfully violates § 524. *In re Hardy,* 97 F.3d 1384, 1390 (11th Cir.1996). A willful violation occurs when the defendant: (1) knew that the discharge injunction was in place, and (2) intended the action that violated the discharge injunction. *Id.*; *see also In re Mele,* 486 B.R. 546, 555 (Bankr.N.D.Ga.2013). In civil contempt proceedings, a court may issue sanctions for two purposes: (1) to coerce a defendant into compliance with the court's order and (2) to compensate a plaintiff for losses sustained. *In re McLean,* 794 F.3d at 1323–24. The plaintiff has the burden of proving by clear and convincing evidence that the discharge injunction was violated. *Id.* at 1326.

### 1. Written Communication

#### (a) Informational Letters

■ The first category of written communications contains letters that were purely informational. There are four types of letters presented to the Court that fit within this category, totaling five letters overall.

First, the Plaintiffs each received similar letters, dated April 15, 2014, notifying them that the Defendant was to become the new servicer of the Loan. On the first page, these letters state that the servicing of the Loan will be transferred to the Defendant effective May 1, 2014, and after the effective date the Defendant will be collecting the payments due under the Loan. A new address to which payments should be sent is provided in bold as well as contact information for each servicer. At the top of the second page, these letters include a bankruptcy disclaimer in bold, capital letters which state:

BANKRUPTCY NOTICE: IF YOU ARE IN BANK-RUPTCY OR IF YOUR OBLIGATION TO REPAY

THIS LOAN WAS DISCHARGED IN BANKRUPTCY, THIS INFORMATIONAL NOTICE IS SENT TO YOU IN ORDER TO COMPLY WITH STATUTORY REQUIREMENTS. IT IS NOT AN ATTEMPT TO COLLECT THE DEBT. YOU MAY DISREGARD INFORMATION PERTAINING TO PAYMENT REMITTANCE. YOU ARE NOT OBLIGATED TO MAKE PAYMENTS AND ANY AMOUNT(S) YOU DO PAY [THE DEFENDANT] IS AT YOUR DISCRETION. (Compl.Ex. 1). The second and third pages also include generic information regarding the Defendant's role in payment processing, loan modifications, updating the insurance loss payee, taxes, customer service, and contact information.

Second, the Plaintiffs received a letter dated May 17, 2014 from the Defendant notifying them of their new account representative. The beginning of the letter includes a bankruptcy disclaimer in bold, capital letters: "THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. IF YOU ARE CURRENTLY IN BANKRUPTCY OR YOUR LOAN WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY." (Compl.Ex. 3). The letter then provides the name and phone number of the new account representative.

Third, the Defendant sent Plaintiff an informational letter dated May 17, 2014 regarding their potential loss mitigation options. At the beginning of the letter it includes a bankruptcy disclaimer that states in bold:

If you filed bankruptcy or obtained a discharge in bankruptcy, this communication is not intended as an attempt to collect a debt from you personally. You therefore have no personal obligation to pay on this account. By sending this notice, Green Tree is complying with statutory notice requirements to enforce the lien against the property. Please read this communication carefully if you wish to avoid foreclosure and/or repossession of the secured property.

(Compl. Ex. 4). The letter then informs the Plaintiffs of different loss mitigation options they may have and provides contact information.

Last, the Defendant sent Plaintiffs a letter notifying them what it does with their personal information. It provides the type of information it collects, the reasons why it shares information, how to limit sharing, how their personal information is protected, how it collects personal information, and the extent to which sharing can be limited.

A few of these letters did contain general information about how to view account information, numbers to call for information regarding their account, and how to make a payment. However, none of the letters in this category contain any statement regarding the amount due under the Loan, the amount delinquent, a payoff amount, or demand payment.

The Court concludes that none of these informational letters had the objective effect of pressuring the Plaintiffs to pay the discharged debt and, therefore, did not violate the discharge injunction. None of the documents in this category of written communication asked for payment or even referenced an amount that is due; they were purely informational. *See, e.g., In re Mele,* 486 B.R. at 555; *In re Brown,* 481 B.R. 351, 359 (Bankr.W.D.Pa.2012). In addition, all but one of the documents included a conspicuous bankruptcy disclaimer which, in effect, states the Defendant is not attempting to collect the debt from the Plaintiffs if they obtained a discharge. The Defendant did not repeatedly send multiple copies of the same documents. These letters were not coercive and did not demand any payment. Although the Plaintiffs claim their ownership was extinguished when they surrendered the Prop-

erty, that is incorrect; they still owned the Property and had certain rights and duties as property owners. Until such time as the secured creditor exercised its *in rem* rights against the Property, some contact with the Plaintiffs on its behalf was appropriate. It appears that Defendant was just attempting to comply with all necessary requirements to keep the Plaintiffs informed until the secured creditor's *in rem* rights were exercised.

*(b) Notifications Regarding Insurance*

The Plaintiff received two letters from the Defendant that fit within this category of written communication.

The first letter, dated May 15, 2014, informs the Plaintiffs that it does not have evidence of insurance on the Property, requests proof of insurance on the Property, and that the Defendant plans to buy insurance for the Property. It states, "[y]ou must pay us for any period during which the insurance we buy is in effect but you do not have insurance." (Compl.Ex. 2). At the top of the second page, it contains a bankruptcy disclaimer in bold, capital letters which states:

THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. INSTEAD, IT IS A LEGALLY REQUIRED NOTICE OF THE CREDITOR'S RIGHT TO PLACE INSURANCE ON THE COLLATERAL TO PROTECT ITS SECURITY INTEREST AGAINST UNINSURED LOSS. THE CREDITOR IS ONLY EXERCISING ITS RIGHTS UNDER THE SECURITY AGREEMENT AS ALLOWED BY LAW. IF YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE CREDITOR IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY.

(Compl.Ex. 2). The remainder of the second and third pages provides more information regarding the need for proof of insurance, that Defendant will buy insurance, and that the Plaintiffs will be responsible for the cost.

At the beginning of the second letter, dated June 10, 2014, it contains a bankruptcy disclaimer in large, bold, capitalized letters which states:

THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT. INSTEAD, IT IS A LEGALLY REQUIRED NOTICE OF THE CREDITOR'S RIGHT TO PLACE INSURANCE ON THE COLLATERAL TO PROTECT ITS SECURITY INTEREST AGAINST UNINSURED LOSS. THE CREDITOR IS ONLY EXERCISING ITS RIGHTS UNDER THE SECURITY AGREEMENT AS ALLOWED BY LAW. IF YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE CREDITOR IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DISCHARGED DEBT AS YOUR PERSONAL LIABILITY.

The remainder of first page informs the Plaintiffs that property insurance was placed on the Property and they are responsible for the cost of the insurance, provides the amount of the insurance premium as $1,957.00 that will be charged to the Plaintiffs plus interest, and includes how they will be billed for the premium. It states, "[y]ou are responsible for the cost of the insurance we have purchased and any finance charges that are assessed." (Compl.Ex. 8). "You will be charged interest on the premium at your contract rate, amortized over the remaining term of the insurance." (*Id.*). The rest of the letter includes more information regarding the insurance purchased, that Plaintiffs are responsible for the cost, and how it can be cancelled. Enclosed with the letter was a copy of the declarations page of the insurance it purchased on which it states twice the amount of the premium.

Neither of the letters contain any statement regarding the amount due under the Loan itself, the amount delinquent, or a payoff amount.

The Defendant contends that it did not violate the discharge injunction by sending these hazard insurance notifications because in doing so it was complying with the Real Estate Settlement Procedures Act ("RESPA"). Pursuant to 12 U.S.C. § 2605(1), "[a] servicer may not impose any charge on any borrower for force-placed insurance with respect to any property securing a federally related mortgage" unless the servicer sends at least two written notices informing the borrower that it must obtain hazard insurance and if it does not the servicer may obtain it at the borrower's expenses. The regulation sets out detailed information that must be sent in each notice.

The Defendant did not violate the discharge injunction by sending these two notices. A mortgagor's *in rem* rights still exist after a debtor obtains a discharge. The Defendant had a right to protect its collateral by obtaining insurance on the Property if the Plaintiffs did not provide evidence that the Property was insured. In order to protect its rights to collect the cost of insurance from the sale of the Property, the Defendant sent these notices in accordance with RESPA. The Defendant did not send any repeat notices or more notifications than were required by RESPA. Although these documents did contain language that the Plaintiffs would be responsible for the cost of insurance and information about payment, they also contained conspicuous bankruptcy disclaimers stating that Defendant was not attempting to collect against the Plaintiffs personally if the Loan was discharged in bankruptcy. Moreover, the Plaintiff did not present any evidence that the Defendant did attempt to collect the cost of the insurance premium from them personally. There is no evidence that the Defendant ever sent any bills or statements demanding payment for the hazard insurance or that they filed suit to collect against them personally for the cost of the hazard insurance.

## 2. Report to Credit Bureaus

Next, the Plaintiffs argue that the Defendant violated the discharge injunction when it reported the Loan to the credit bureaus. They contend that this reporting resulted in difficulties when they attempted to obtain a loan to purchase another house. Reporting a debt to a credit reporting agency in and of itself is not a violation of the discharge injunction. *See, e.g., In re Giles,* 502 B.R. 892, 904 (Bankr.N.D.Ga.2013) ("What [the debtor] overlooks is that a discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. Because the debt exists, its reporting alone is not a violation of the discharge injunction absent showing that the purpose or effect of the reporting was to collect the discharged debt as a personal liability of the debtor."); *Bibolotti v. American Home Mortgage Servicing, Inc.,* 2013 WL 2147949, at *14 (E.D.Tex. May 15, 2013); *In re Mahoney,* 368 B.R. 579, 584 (Bankr.W.D.Tex.2007); *In re Zine,* 521 B.R. 31, 40 (Bankr.D.Mass.2014) ("Typically courts require creditor reporting to be coupled with other acts, such as substantial contacts by telephone or mail, to evidence that it was done to coerce payment from the debtor").

In support of this argument, the Plaintiffs attached to the Complaint what appear to be Equifax credit reports with the Defendant's name. (Compl.Ex. 12). The Loan that the Defendant reported states that it was a loan for real estate and that the Loan was included in bankruptcy. In addition, it does not contain a balance due or an amount past due. It states that it was last active in April 2010. The Plaintiffs also presented a document which appears to be a credit report for Carlos H.

Henriquez from Experian. (Pls.' Mot. Ex. 24). This states that the loan was for real estate, the balance is zero, the account is closed, and that it was discharged in the Plaintiffs' bankruptcy case. Last, the Plaintiffs attached documents, which they state in the index of exhibits that it is a credit report for Carlos H. Henriquez from TransUnion. However, these documents do not contain any indication that they are in fact from TransUnion or whose credit report it is. In any event, these show a real estate loan account with the Defendant, state that the condition is derogatory, the balance is zero, and that the loan was included in the Plaintiffs' chapter 7 discharge.

Even though each of the credit reports state that the Loan was discharged and the balance the Plaintiffs owe is zero, they argue this reporting is inaccurate for four different reasons. First, they argue it is false because it was reported as a "REAL ESTATE/EQUITY TRANSFER" since the Plaintiffs' had no equity in the property. Second, the Defendant reported a different loan number than that was given to the Plaintiffs by Bank of America when they obtained the Loan in 2005. Third, the Loan was reported as discharged which they assert is false because they did not include the account number created by the Defendant in their bankruptcy case. And last, the loans were already reported by Bank of America.

The Court does not find any of these arguments persuasive. The Loan was reported as discharged and as having a balance of zero; this is precisely how a discharged loan should be reported, even if it contains a new account number. *See In re Helmes,* 336 B.R. 105, 107 (Bankr.E.D.Va. 2005) ("The debtor asserts—and the bank agrees—that industry standards require that a debt discharged in bankruptcy be reported to a credit reporting agency with the notation "Discharged in bankruptcy" and with a zero balance due."). The discharged Loan was subsequently transferred to EverBank and, thereafter, the Defendant began servicing the Loan. A new account number was assigned to the Loan, but that does not create a new loan—it is the same Loan with a different account number. The Plaintiffs were notified of the new account number by the very same documents that they now contend violated the discharge injunction. The Court concludes that there was no violation of the discharge injunction by the Defendant for reporting this information to the credit bureaus. When the credit reports clearly indicate that the Plaintiffs owe nothing on the Loan and that it was discharged in bankruptcy, it does not appear that the Defendant is coercing or pressuring the Plaintiffs to pay anything. The fact that the Loan was reported as discharged and with no balance in each of the three reports suggests that the Defendant was aware that it was discharged and that the Plaintiffs were not personally liable.

### 3. Phones Calls

The Plaintiffs also allege that phone calls *they initiated* to the Defendant—and not the other way around—violated the discharge injunction. (Pls.' Resp. in Opp'n to Def.'s Mot. for Summ. J. 40, Doc. 26). The Plaintiffs did not present any evidence that the Defendant contacted them by phone or demanded any payment during these phone conversations which they initiated. (Def.'s SOMF ¶¶ 11–12). The Plaintiffs neither proved nor alleged the existence of a material question of fact that the Defendant violated the discharge injunction during these telephone calls.

### 4. Overall Effect

██ In addition to looking at each individual act that the Plaintiffs contend are

violations of the discharge injunction, it is also appropriate to look at the overall factual situation in determining whether the Defendant violated the discharge injunction. *Bibolotti v. American Home Mortgage Servicing, Inc.*, 2013 WL 2147949, at *14 (E.D.Tex. May 15, 2013); *In re Zine*, 521 B.R. 31, 38 (Bankr.D.Mass.2014); *In re Nordlund*, 494 B.R. 507, 519 (Bankr. E.D.Cal.2011) (concluding that sheer volume and repetitiveness of 24 communications over a 10 month period violated the discharge injunction because taken together constituted a "deliberate attempt by [Bank of America] to sow confusion and doubt as to whether it would recognize the debtor's discharge").

Overall, it does not appear to the Court that the Defendant was involved in such a pattern of behavior during the time it serviced the Loan as to result in a violation of the discharge injunction. While the Defendant did send written communication to the Plaintiffs and report the Loan to credit bureaus, it never sent any statements to the Plaintiffs or demanded any payment from them. It did not send a voluminous number of communications nor did it repeatedly send the same documents. All but one of the written communications contained a conspicuous bankruptcy disclaimer. Once the Defendant did place hazard insurance on the Property, the Plaintiffs did not present any evidence that it sent any statements for the premium or otherwise contacted the Plaintiffs to collect the insurance premium. There was no evidence that any actions were commenced in state or federal court against the Plaintiffs seeking to hold them personally liable. All three credit reports the Plaintiffs presented indicate that the Defendant reported the Loan as discharged and with a balance of zero.

While dealing with a mortgagor and/or loan servicer after receiving a bankruptcy discharge may be inconvenient, a debtor still has some relationship with them until they no longer have an interest in the property which is collateral for the mortgage. The Plaintiffs here incorrectly assume that their ownership interest was extinguished once they vacated the Property and informed Bank of America of their intention to surrender the Property. Contrary to their beliefs, filing a bankruptcy case and later surrendering a house does not extinguish a debtor's ownership of the property. Nor does it extinguish the mortgagor's *in rem* rights against the property, and until those rights are exercised or the property is otherwise sold, a debtor still has an interest in it and must be able to tolerate a small amount of communication from the mortgagor or servicer regarding the property.

### Conclusion

Accordingly, for the reasons stated herein, it is hereby

ORDERED that the Plaintiffs' motion to strike the Defendant's response to their motion for summary judgment is DENIED, and it is

FURTHER ORDERED that the Plaintiffs' motion for summary judgment is DENIED, and it is

FURTHER ORDERED that the Defendant's motion for summary judgment is GRANTED and the Complaint is DISMISSED.

**IT IS ORDERED.**