*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 22b0004n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: CHANDRA L. BERRY,

        *Debtor*.

_____

CHANDRA L. BERRY,

        *Appellant/Cross-Appellee*,

  *v*.

FAY SERVICING, LLC,

        *Appellee/Cross-Appellant*,

WELLS FARGO HOME MORTGAGE,

        *Appellee*.

Nos. 21-8005/8007

On Appeal from the United States Bankruptcy Court
for the Western District of Tennessee at Memphis.
No. 2:11-bk-28881—Jennie D. Latta, Judge.

Decided and Filed: September 9, 2022

Before: BAUKNIGHT, GUSTAFSON, and MASHBURN, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Alex McFall, BRADLEY ARANT BOULT CUMMINGS LLP, Nashville, Tennessee, for Appellee/Cross-Appellant. Bradley E. Trammell, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWTIZ, P.C., Memphis, Tennessee, for Appellee. Chandra L. Berry, Cordova, Tennessee, pro se.

---

**OPINION**

---

JOHN P. GUSTAFSON, Bankruptcy Appellate Panel Judge. After Chandra L. Berry ("Ms. Berry") filed for Chapter 7 bankruptcy, the bankruptcy court issued a discharge order relieving her from personal liability on her discharged debts and generally barring creditors from taking actions to collect those debts, including her mortgage debt.[1] After her bankruptcy case was closed, Ms. Berry surrendered and relinquished possession of her home following foreclosure. Nevertheless, Wells Fargo Home Mortgage ("Wells Fargo") and Fay Servicing, LLC ("Fay"), the servicers for Ms. Berry's extinguished mortgage, sent her correspondence regarding the loan.

In response, Ms. Berry reopened her bankruptcy case. She moved to hold Wells Fargo and Fay in contempt and asked the bankruptcy court to impose sanctions. Ms. Berry's motion for contempt alleged that Wells Fargo and Fay violated the discharge injunction by sending her correspondence in an attempt to collect the discharged mortgage debt. The bankruptcy court granted Ms. Berry's motion in part and denied it in part. The bankruptcy court found Fay's conduct to be a violation of the discharge order's injunction and imposed sanctions against Fay in the amount of $10,749.72 but found that Wells Fargo's conduct was not a violation.

Ms. Berry, proceeding pro se, appeals the bankruptcy court's order denying her motion against Wells Fargo. Ms. Berry argues the bankruptcy court erred by failing to hold Wells Fargo in contempt because Wells Fargo's conduct and correspondence were improper attempts to collect a debt. Wells Fargo argues that the bankruptcy court correctly found that Wells Fargo did not violate the discharge order's injunction.

Ms. Berry also appeals the bankruptcy court's order granting her motion against Fay, arguing that the bankruptcy court erred in limiting its contempt finding to Fay's communications only after October 26, 2020, and not finding that prior communications were also improper

---

[1]A "deed of trust" and a "mortgage" are distinct, but the bankruptcy court and the Tennessee Court of Appeals used the terms interchangeably in referring to the instrument used to secure repayment from Ms. Berry. For purposes of this appeal, we do the same.

attempts to collect a debt.  Therefore, Ms. Berry asserts that the damages the court awarded were inadequate.  Fay filed a cross-appeal.  Fay first argues that the bankruptcy court abused its discretion by holding that Fay's actions were contemptuous.  Second, Fay argues that damages were not warranted, but even if they were warranted, any damages awarded should have been lower.

Because we find no abuse of discretion, we affirm.

## ISSUES ON APPEAL

The Panel finds that the following issues have been preserved and are to be decided in these cross-appeals: (i) whether Wells Fargo's conduct was an improper attempt to collect a debt; (ii) whether the bankruptcy court erred in finding Fay in contempt; and (iii) whether the bankruptcy court erred in awarding damages.

## JURISDICTION AND STANDARD OF REVIEW

The United States District Court for the Western District of Tennessee has authorized appeals to the Panel, and no party has filed to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right under 28 U.S.C. § 158(a)(1).  "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020).  "An order finding a party in contempt and imposing sanctions is a final order for purposes of appeal."  *Ragone v. Stefanik & Christie, LLC* (*In re Ragone*), No. 20-8013, 2021 WL 1923658, at *1 (B.A.P. 6th Cir. May 13, 2021).

The bankruptcy court's determination that a party "violated the discharge injunction presents a mixed question of law and fact."  *Id.* at *2.  "[T]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work."  *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018).  The court's interpretation of 11 U.S.C. § 524 is a question of law reviewed de novo. *In re Ragone*, 2021 WL 1923658, at *2; *see also Collins v. Tenn. Dep't of Rev.* (*In re Faye*

*Foods, Inc.*), 766 F. App'x 204, 209 (6th Cir. 2019) (statutory interpretation is reviewed de novo). "Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *In re Ragone*, 2021 WL 1923658, at *2 (citation omitted).

The bankruptcy court's determination, based on the evidence presented, that a party violated § 524 or a discharge order and its imposition of sanctions are reviewed for an abuse of discretion. *See id.*; *In re Faye Foods*, 766 F. App'x at 209 (regarding review of sanctions award); *Franklin Credit Mgmt. Corp. v. Cook*, 551 B.R. 613, 623 (M.D. Tenn. 2016) (same). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *In re Ragone*, 2021 WL 1923658, at *2 (alteration in original) (citation omitted). "A finding of fact is deemed clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Franklin Credit Mgmt. Corp.*, 551 B.R. at 620 (citation omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *In re Felix*, 582 B.R. 915, 918 (B.A.P. 6th Cir. 2018) (citation omitted). "Ultimately, the question is not whether the reviewing court would have imposed sanctions, 'but rather whether a reasonable person could agree with the bankruptcy court's decision.' In other words, 'if reasonable persons could differ on the issue, then there is no abuse of discretion.'" *Johnston v. Hildebrand* (*In re Bagsby*), 40 F.4th 740, 745 (6th Cir. 2022) (alteration omitted) (quoting *B-Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 936 (6th Cir. 2010)).

## FACTS

On August 5, 2004, Ms. Berry purchased a house located at 6215 Malloch Drive in Memphis, Tennessee ("Property"). *Bank of N.Y. Mellon v. Berry*, No. W2017-01213-COA-R3-CV, 2018 WL 930967, at *1 (Tenn. Ct. App. Feb. 15, 2018). At some point, Ms. Berry defaulted on her mortgage obligation, and her attempts to modify or restructure the loan failed. *Berry v. Mortg. Elec. Registration Sys.*, No. W2013-00474-COA-R3-CV, 2013 WL 5634472, at *1 (Tenn. Ct. App. Oct. 15, 2013).

Ms. Berry filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 30, 2011.  (Order on Am. Mot. at 2, Bankr. No. 11-28881-L, ECF No. 100.)  On November 30, 2011, the bankruptcy court granted America's Servicing Company, as servicer for Bank of New York Mellon Trust Company, N.A. ("BNY") relief from the automatic stay to proceed with foreclosure.  (*Id.* at 3.)

On December 14, 2011, the bankruptcy court entered an order of discharge relieving Ms. Berry from all of her dischargeable debts.  (*Id.*)  After receiving her discharge, Ms. Berry attempted "to prevent her house from being foreclosed upon."  *Bank of N.Y. Mellon*, 2018 WL 930967, at *1.  These attempts ultimately were unsuccessful, and America's Servicing Company, as servicer for BNY, which claimed to hold the Deed of Trust on Ms. Berry's Property, "advised Ms. Berry that they planned to foreclose on her home on or about June 29, 2012."[2]  *Berry*, 2013 WL 5634472, at *1.  On May 8, 2015, BNY purchased the Property at foreclosure.  *Bank of N.Y. Mellon*, 2018 WL 930967, at *1 ("The foreclosure sale occurred on May 8, 2015, and [BNY] purchased the property.").

After foreclosure, Ms. Berry "refused to vacate the premises."  *Id.*  In June 2015, "BNY filed an unlawful detainer warrant against Ms. Berry" to obtain possession of the Property. *Id.* Ms. Berry counterclaimed, alleging "wrongful foreclosure, fraud and/or misrepresentation, slander of title, wantonness, intentional misconduct, and reckless and/or grossly negligent actions."  *Id.*  Ms. Berry sought to set aside the sale to BNY, to void the trustee's deed upon sale, and to quiet title to the Property. *Id.*  This attempt to maintain possession was unsuccessful.  *See id.* at *2-6.  On February 15, 2018, the Tennessee Court of Appeals upheld the trial court's dismissal of Ms. Berry's counterclaims.  *Id.* at *6 ("We affirm the trial court's judgment awarding BNY summary judgment and dismissing Ms. Berry's counterclaims.").

In June 2018, Ms. Berry relinquished possession and vacated the Property after a "cash for key" settlement. (Am. Mot. for Contempt, Am. Mot. for Sanctions for Violation of the Discharge Inj., Ex. Q at 30, Bankr. No. 11-28881, ECF No. 81-1) [hereinafter "Exs. to Am.

---

[2]The Tennessee Court of Appeals refers to "American Servicing Company," *Berry*, 2013 WL 5634472, at *1, not "America's Servicing Company."  This Panel assumes the Tennessee Court of Appeals was referring to the same entity that was granted relief from the automatic stay in Ms. Berry's bankruptcy case.

Mot."].[3] On April 10, 2020, BNY prepared and recorded a Corporate Assignment of Deed of Trust conveying all its right, title, and interest in the Deed of Trust to NRZ REO VII LLC. (Ex. 4 at 1, Obj. to Mot. to Reopen, Bankr. No. 11-28881, ECF No. 52-4.)

### I. Wells Fargo's Communications.

On August 27, 2020, Wells Fargo sent Ms. Berry a letter with the subject line: "This mortgage is being transferred to a new servicer." (Exs. to Am. Mot. at 2.) The first paragraph of the letter following the subject line stated: "On September 17, 2020, the servicing of this mortgage transfers from [Wells Fargo] to [Fay]. This means [Fay] will handle items related to servicing this mortgage, such as processing payments and helping you with questions." (*Id.*) This letter included a prominently placed disclaimer before the subject line, specifying the following:

> PLEASE NOTE: This notice is being provided for informational purposes only. As a result of at least one bankruptcy filing that included the above referenced account, Wells Fargo is NOT attempting in any way to violate any provision of the United States Bankruptcy Code or to collect a debt (deficiency or otherwise) from any customer(s) who is impacted by an active bankruptcy case or has received a discharge, where the account was not otherwise reaffirmed or excepted from discharge. THIS IS NOT A BILL OR A REQUEST FOR PAYMENT AS TO THESE CUSTOMER(S).

(*Id.*)

On September 22, 2020, Wells Fargo acknowledged receiving a letter from Ms. Berry. (*Id.* at 6.) In Ms. Berry's letter,[4] she explained that the "mortgage debt has been discharged," foreclosure took place in May 2015, and the Property was surrendered in June 2018. (*Id.* at 32.) Ms. Berry asserted that Wells Fargo's communication violated the "bankruptcy injunction," and advised Wells Fargo that failure to cease communications could result in legal action. (*Id.*)

---

[3]Ms. Berry attached numerous documents as exhibits to the Amended Motion for Contempt, Bankr. No. 11-28881, ECF No. 81. It is difficult to determine which pages comprise each document, and it is clear that only portions of some documents are attached as exhibits. It is also clear that Ms. Berry submitted only one page of some two-sided documents as exhibits. The documents included as exhibits total sixty-seven pages. For the purpose of identification herein, this Panel will cite to the documents as they appear within the sixty-seven pages, e.g., Exs. to Am. Mot. at 1.

[4]Ms. Berry sent this letter, dated September 15, 2020, to Wells Fargo, with a copy addressed to Fay. (*Id.* at 32.) Fay acknowledged receipt by its letter of December 28, 2020. (Ex. A at 1, Notice of Filing, ECF No. 91-1.)

On September 27, 2020, Wells Fargo sent Ms. Berry a letter titled, in the right-hand corner, "Final Escrow Review Statement."**5** (*Id.* at 7.) The letter included a disclaimer below the title that the communication was for "*informational purposes only*." (*Id.*) An additional disclaimer appeared in the body of the page, stating: "**PLEASE NOTE:** *If you are presently seeking relief (or have previously been granted relief) under the United States Bankruptcy Code, this statement is being sent to you for informational purposes only.*" (*Id.*)

On October 5, 2020, Ms. Berry informed Wells Fargo by letter that the escrow statement was for a "discharged mortgage and foreclosed property." (*Id.* at 34.) Beginning on September 22, 2020, Wells Fargo acknowledged receipt of Ms. Berry's letters and informed her that the disputes were under review. (*Id.* at 6, 25-28, 58, 62-63, 65.) On October 27, 2020, Wells Fargo stated that it had resolved Ms. Berry's initial inquiry confirming that "foreclosure was completed." (*Id.* at 29.) Wells Fargo further stated that its service-transfer communication had included the "correct disclaimers." (*Id.*)

## II. Fay's Communications.

Beginning on or about September 28, 2020, Fay sent Ms. Berry a series of correspondence. (*Id.* at 37.)

Fay sent Ms. Berry a letter with the heading "**Important bankruptcy information below.**" (*Id.* at 15.) In that letter, Fay informed Ms. Berry that throughout the "Welcome Kit" and on all future written correspondence from Fay, she would see the following disclaimer on the bottom of each page ("Bankruptcy Disclaimer I"):

> Fay Servicing LLC is a debt collector, and information you provide to us will be used for that purpose. To the extent your original obligation was discharged, or is subject to an automatic stay under the United States Bankruptcy Code, this is being provided for informational purposes only and does not constitute an attempt to collect a debt or impose personal liability.

---

**5**Ms. Berry only submitted one page for this two-sided document as an exhibit. (Exs. to Am. Mot. at 7 ("Please take a moment to look at the reverse side of this statement which shows the actual history for the escrow account and projections from the last escrow review.").) Ms. Berry attached what appears to be a third page to this document as an exhibit in her motion to reopen her bankruptcy case. (Ex. B at 7, Mot. to Reopen Case, Bankr. No. 11-28881, ECF No. 46-4.)

The second paragraph of the letter stated that if the original obligation had been discharged, Bankruptcy Disclaimer I meant Fay's letters "**are not demands for payment.**" (*Id.*) The third paragraph of the letter stated Ms. Berry would be contacted about "voluntary payments" that "may prevent foreclosure." (*Id.*) Fay designated a phone number and a mailing address in Texas ("First Texas Address") to "cease all further communications upon" request. (*Id.*) Bankruptcy Disclaimer I appeared along the bottom margin of the page in smaller inconspicuous font.

Fay also sent Ms. Berry a letter with the heading "**Welcome to Fay Servicing, LLC**." (Ex. F at 6, Mot. to Reopen Case, Bankr. No. 11-28881, ECF No. 46-3.) This letter introduced Ms. Berry to the company and described Fay's mortgage loan servicing model. (*Id.*) Bankruptcy Disclaimer I appeared along the bottom margin of the page in smaller inconspicuous font.

Ms. Berry also received a "**Welcome Kit Check List**" itemizing and briefly describing the following items: Notice of Servicing Transfer Letter; Mortgage Servicing Fee Schedule; Servicemembers Civil Relief Act Notice Disclosure; Automatic Payment Authorization for Mortgage Payments; and a Request for Taxpayer Identification Number and Certification (Form W-9). (*Id.* at 7.) Bankruptcy Disclaimer I appeared along the bottom margin of the page in smaller inconspicuous font.

The Notice of Servicing Transfer Letter requested Ms. Berry to send "all payments due on or after" September 17, 2020, to Fay. (Exs. to Am. Mot. at 11, 14.) Fay designated the First Texas Address for Ms. Berry to send any such payments. (*Id.*) Bankruptcy Disclaimer I appeared along the bottom margin of the page in smaller inconspicuous font.

The rest of the correspondence or communications between Fay and Ms. Berry will be categorized by the date on the correspondence or the date of communication.

*September 28, 2020*

Fay:    Fay sent Ms. Berry a letter with the heading "**Making Mortgage Payments.**" (*Id.* at 66.) Fay designated the First Texas Address for questions and designated a mailing address in Illinois ("First Illinois Address") for complaints. (*Id.*) Fay sent Ms. Berry a letter regarding a "**Request for Taxpayer Identification Number and Certification (Form W-9).**" (*Id.* at 67.) Fay enclosed Form W-9 and informed Ms. Berry that failure to provide tax information may result in a "$50 penalty." (*Id.*) Bankruptcy Disclaimer I appeared along the bottom margin of the pages in smaller inconspicuous font. (*Id.* at 66-67.)

Fay:    Fay sent Ms. Berry a letter describing options available if she was having difficulty making mortgage payments. (*Id.* at 8.) The second paragraph of the letter informed Ms. Berry of "non-retention options" available such as a sale, short sale, or deed in lieu of foreclosure. (*Id.*) Fay's trademark appeared in the upper left-hand corner of this letter, and immediately next to this trademark was an address in Texas for "RETURN SERVICE ONLY" ("Second Texas Address"). (*Id.*) Bankruptcy Disclaimer I appeared along the bottom margin of the page in smaller inconspicuous font. (*Id.*)

Fay:    Fay sent Ms. Berry a letter with the heading "**Fair Debt Collection Practices Act (FDCPA) Validation Notice**."[6] (*Id.* at 9.) The first paragraph of this letter stated, "the amount of your debt as of 9/16/2020 is provided below." (*Id.*) The letter went on to say, in the third, fourth, and fifth paragraphs, "Current Monthly Payment Amount: $2,468.76," "Payment Due Date: 10/01/2006," and "Summary of Total Debt:" with a "**Principal Balance, Interest, Escrow and Other Debt**" and the "**Total Amount of Debt:** $779,660.50." (*Id.*) The second paragraph advised that Fay is "collecting the debt on behalf of: NRZ." (*Id.*) The seventh paragraph further advised "if you do not notify us within thirty days after receipt of this notice that you dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid." (*Id.*) A different disclaimer appeared along the bottom margin of the page in smaller inconspicuous font stating, in material part:

> Fay Servicing LLC is a debt collector, and information you provide to us may be used to collect a debt. However, if you have filed for bankruptcy, we will fully respect any applicable automatic stay, modification or discharge. Further, if you filed for Chapter 7 bankruptcy, received a discharge, and this loan was not reaffirmed in the bankruptcy case, we will exercise only in rem rights as allowed under applicable law and will not attempt any act to collect, recover, or offset the discharged debt as your personal liability.

---

[6]On September 30, 2020, Fay sent Ms. Berry a letter that this Fair Debt Collection Practices Act Validation Notice "contained inadvertent typographical errors in paragraph (5.)." (*Id.* at 16.) This letter did not change any of the remaining content except paragraph (5.) "Summary of Total Debt . . . should have stated the following: (5.) Late Charges: $6,912.69" and "(5.) Total Amount of Debt: $786,573.19." (*Id.*)

### *October 5, 2020*

Fay: Fay sent Ms. Berry a letter informing her that "the above referenced property"[7] had been found to be "vacant or abandoned." (*Id.* at 18.) Fay designated an email address, phone number, and mailing address in Illinois ("Second Illinois Address") for Ms. Berry to contact Fay immediately with questions or "if this information is incorrect." (*Id.*) Fay's trademark appeared in the upper left-hand corner of this letter, and immediately next to this trademark was a third address in Illinois ("Third Illinois Address").[8] (*Id.*) Bankruptcy Disclaimer I appeared along the bottom margin of the page in smaller inconspicuous font.

Berry: Ms. Berry sent Fay a "**CEASE and DESIST**" letter to its First Texas Address. (*Id.* at 37.) Ms. Berry informed Fay that she had received Fay's written and verbal notices; "DISPUTED" the debt; enclosed her bankruptcy discharge; informed Fay of the Property's history; and stated that Fay's letters were misleading and its correspondence caused a loss of sleep and waste of time. (*Id.*) Ms. Berry urged Fay to "**CEASE and DESIST**" any future written and verbal communications. (*Id.* at 38.) Fay points out that Ms. Berry's letter did not enclose "a copy of the foreclosure deed." (Appellant/Cross-Appellee Br. at 7-8.)

### *October 8, 2020*

Fay: Fay sent Ms. Berry a letter with a subject line: "**Please provide hazard insurance information for** [the Property]." (Exs. to Am. Mot. at 19.) Printed on the envelope was a notice, "**IMPORTANT INFORMATION CONCERNING YOUR HOMEOWNER'S INSURANCE COVERAGE**." (*Id.* at 20.) The first paragraph of this letter stated that hazard insurance had expired, and Fay would be purchasing insurance. (*Id.* at 19.) The letter then stated that Ms. Berry "must pay [Fay] for any period during which the insurance we buy is in effect." (*Id.*) On the second page of this transmittal, Fay stated "the following information is being provided as a supplement to the Notice on page 1 of this document," and under the heading "**ESCROWING FOR INSURANCE**," the second and third paragraphs state: "**monthly mortgage payments will be increased to include the cost of this policy**." (Ex. J at 5, Mot. to Reopen Case, Bankr. No. 11-28881, ECF No. 46-5.) The last paragraph on the second page advises that any insurance Fay purchases would not relieve Ms. Berry of her "obligation to provide coverage." (*Id.*) Fay designated a mailing address in Ohio ("Ohio Address") and informed Ms. Berry that she "should immediately provide [Fay] with" insurance information. (*Id.* at 4.) This letter did not include any disclaimer language expressly stating that it was not a demand for payment.

---

[7]In this letter, the "above referenced property" cross-referenced a property located at 8563 Griffin Park Drive in Cordova, Tennessee, a different address than the Property's actual address.

[8]Fay sent Ms. Berry undated correspondence describing what Fay did with personal information. (*Id.* at 12.) At the bottom of this correspondence was a "mail-in form" designating the Third Illinois Address for Ms. Berry to mail a request that would limit the personal information Fay may share. (*Id.*)

### *October 10, 2020*

Fay:    Fay sent Ms. Berry a letter titled "**Mortgage Statement**" in a box in the upper right-hand corner. (Exs. to Am. Mot. at 13.) Embossed on the envelope was the phrase "**STATEMENT ENCLOSED**." (*Id.* at 17.) A second box below the "**Mortgage Statement**" box in the upper right-hand corner of this statement listed the "**Payment Due Date**" and the "**Amount Due**." (*Id.* at 13.) Below that box was a third box with an "**Explanation of Amount Due**," which itemized the principal, interest, escrow, monthly payment due, total fees, and charges. (*Id.*) The bottom portion of the mortgage statement stated Ms. Berry's full name and included a box with the following information, "**Due by 11/01/2020: $440,061.71**," and a place to write in the "total amount enclosed." (*Id.*)

On the left-hand side of this statement was another box providing a "**Bankruptcy Message**." This message includes a disclaimer that Fay's records show that Ms. Berry is in bankruptcy or had discharged personal liability for the debt and that the statement was for "informational and compliance purposes only" and "not an attempt to collect a debt against you." (*Id.*) This disclaimer also designated the First Illinois Address for Ms. Berry to submit a written request "to stop receiving a mortgage statement." (*Id.*)

### *October 12, 2020*

Berry:  Ms. Berry sent a letter to Fay's First Texas Address, "RE: **DEBT DISPUTE**" informing Fay that she was in receipt of Fay's "debt collection Notices." (*Id.* at 40.) Ms. Berry also requested certain information and documentation in regard to the Property. (*Id.*)

### *October 19, 2020*

Berry:  Ms. Berry sent a letter to Fay's Second Illinois Address, "RE: **THIRD NOTICE OF DISPUTE / PROPERTY OCCUPANCY / AND TO CEASE AND DESIST**." (*Id.* at 41.) In response to Fay's letter dated October 5, 2020, which stated that the Property was vacant or abandoned, Ms. Berry informed Fay that the Property was "**<u>SURRENDERED</u>**" after foreclosure and not abandoned. (*Id.*) Ms. Berry "reminded" Fay to "Cease and Desist any and all future communications." (*Id.*)

Berry:  Ms. Berry sent a letter to Fay's First Illinois Address, "RE: **FOURTH NOTICE OF DISPUTE AND TO CEASE AND DESIST**." (*Id.* at 42.) In response to Fay's "Mortgage Statement," Ms. Berry asserted that Fay was in violation of the "Fair Debt Collection Practices Act" and "bankruptcy code." (*Id.*) Ms. Berry explained that Fay's disclaimers stated that it was aware of the status of the debt, yet Fay continued "to cause injury by unlawfully attempting to collect the discharged debt on a foreclosed property through your communications." (*Id.*) Ms. Berry "<u>reminded</u>" Fay to "<u>Cease and Desist any and all future communications</u>." (*Id.*)

Berry:  Ms. Berry sent a letter to Fay's Ohio Address, "RE: **FIFTH NOTICE OF DISPUTE OF HAZARD INSURANCE COVERAGE AND TO CEASE AND DESIST**." (*Id.* at 43.) In response to Fay's letter regarding hazard insurance information, Ms. Berry informed Fay "**I DO NOT OWN THE PROPERTY, AND I DO NOT HAVE PHYSICAL POSSESSION OF THE PROPERTY**." (*Id.*) Ms. Berry asserted that Fay

was in violation of the "Fair Debt Collection Practices Act" and "bankruptcy code" and that Fay continued "to cause injury by unlawfully attempting to impose liability for hazard insurance coverage on a discharged debt and foreclosed property through your communications." (*Id.*) Ms. Berry "<u>reminded</u>" Fay to "<u>Cease and Desist any and all future communications and unlawfully imposing liability for hazard insurance coverage</u>." (*Id.*)

Berry: Ms. Berry sent a letter to Fay's Texas Return Address, "RE: **RELEASE OF MORTGAGE**." (*Id.* at 44.) Ms. Berry recited the history of the "<u>foreclosed</u>" Property, the "<u>discharged</u>" debt with no deficiency due following foreclosure, and physical possession being "<u>surrendered</u>." (*Id.*) Ms. Berry informed Fay that the "Trustee's Deed was filed in the Shelby County Tennessee Register of Deeds." (*Id.*)

### *October 26, 2020*

Fay: Fay responded to Ms. Berry, stating, "Dear Appelant [sic] or Complaintant [sic]: please be advised Fay received your correspondence." (*Id.* at 21.) Fay did not specify which correspondence Fay had received. This letter advised Ms. Berry to expect a response within thirty business days because her issue had been "escalated" for review. (*Id.*) Fay further advised that if, at the end of thirty days, Fay was unable to resolve her matter, Fay would provide written status updates every fifteen business days. (*Id.*) Immediately following this information, in the same sized font, appeared Bankruptcy Disclaimer I. (*Id.*) Along the bottom margin of the letter was Fay's Third Illinois Address. (*Id.*)

### *October 27, 2020*

Fay: Fay called Ms. Berry and left a telephone message or voicemail ("Phone Message") of its threat of intent to file suit. (*Id.* at 45.) Ms. Berry's sworn declaration asserted that Fay had made a call to Ms. Berry and described the content of the call as Fay "threatening to take legal action and initiate a second foreclose [sic]." (Decl. of Chandra L. Berry in Supp. of Mot. ¶ 13, Am. Mot., Bankr. No. 11-28881, ECF No. 81.)[9]

### *October 28, 2020*

Fay: Fay sent Ms. Berry a letter providing her with "formal notice" that she was in default. (Exs. to Am. Mot. at 22.) On the first page, the formal notice of default advised that failure to cure by making a "payment of $542,350.79" on or before December 2, 2020, may result in acceleration, foreclosure, and sale of the Property. (*Id.*) The third paragraph on the first page of the formal notice of default also stated a "Payment Due Date" and a "Total Monthly Payments Due" and then listed the unpaid monthly payments beginning on October 1, 2006 and ending on June 1, 2016, with two additional monthly payments for September and October 2020. (*Id.* at 22-24.) The list spans approximately

---

[9]Along with the reference to Fay's Phone Message threatening to file suit, Ms. Berry filed a sworn Declaration declaring under the penalty of perjury that she "received at lease [sic] eight (8) calls from Fay" over a three-month period. (Decl. of Chandra L. Berry in Supp. of Mot. ¶ 12, Am. Mot., Bankr. No. 11-28881, ECF No. 81.)

five pages.**[10]** (*Id.*) On the fifth page, after listing the "Monthly Payments Due" the formal notice of default also included, among other language, "Late Charges" and a "**TOTAL YOU MUST PAY TO CURE DEFAULT: $542,350.79**." (*Id.* at 24.) The formal notice of default then designated a fourth address in Illinois for Ms. Berry to send payments to cure the current default. (*Id.*) Additionally, on the fifth page, the formal notice of default stated that Fay "may pursue a deficiency judgment, if permitted by applicable law," if foreclosure proceedings are undertaken. (*Id.*) The following disclaimer, in conspicuous font, appeared on the fifth page:

> **To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.**
>
> **Fay Servicing, LLC is a debt collector, this is an attempt to collect a debt and any information obtained will be used for that purpose.**
>
> **Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is valid. If you notify us in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. Upon your written request within thirty (30) days after the receipt of this letter, we will provide you with the name and address of the original creditor, if the original creditor is different from the current creditor.**

### *November 2, 2020*

Berry: Ms. Berry sent a letter to Fay's Third Illinois Address, "RE: **SIXTH NOTICE OF DISPUTE OF DEBT'S VALIDITY**." (*Id.* at 45.) Ms. Berry informed Fay that she had received the formal notice of default and the Phone Message on or about October 27, 2020. (*Id.*) Ms. Berry reiterated her repeated responses disputing the debt and Fay's failure to "cease and desist" actions to collect. (*Id.*) Ms. Berry further advised Fay that its actions were "wholly in violation of the Bankruptcy Code." (*Id.*) Ms. Berry informed Fay that for these reasons, she would be "pursuing legal action." (*Id.*)

---

**[10]**The formal notice of default was six pages, e.g., "Page 1 of 6," but only three pages were attached as exhibits to this filing. Ms. Berry attached an additional page accompanying the formal notice of default as an exhibit to her motion to reopen her bankruptcy case that designated the Third Illinois Address for correspondence. (Ex. L at 12, Mot. to Reopen Case, Bankr. No. 11-28881, ECF No. 46-5.)

### *November 9, 2020*

Fay:   Fay sent Ms. Berry a letter: "**Second and final notice – please provide hazard insurance information for** [the Property]." (*Id.* at 59.)  This letter was similar to the letter Fay sent on October 8, 2020, with one significant difference.  At the bottom of this letter, Fay expressly stated that the insurance Fay intended to purchase would "**cost an estimated \$3,292.00 annually**." (*Compare id.* at 19 ("The insurance we buy: **may be significantly more expensive than the insurance you can buy yourself**."), *with id.* at 59 ("The insurance we buy: **will cost an estimated \$3,292.00 annually, which may be significantly more expensive** . . . .").)  Fay designated the Ohio Address for Ms. Berry to submit insurance information. (*Id.*)  This letter did not include any disclaimer language stating that it was not a demand for payment.

### *November 10, 2020*

Fay:   Fay sent Ms. Berry a letter titled "**Mortgage Statement**" in a box in the upper right-hand corner. (*Id.* at 64.)  This statement is similar to the statement dated October 10, 2020.  First, the top of this statement had the same box listing the "**Payment Due Date**" and "**Amount Due.**" (*Id.*)  However, the "**Amount Due**" was increased to include Ms. Berry's "missed payment" for October 2020. (*Compare id.* at 13 ("**Amount Due \$440,061.71**."), *with id.* at 64 ("**Amount Due \$442,550.47**.").)  Second, the mortgage statement included a place to write in the "total amount enclosed" and also increased the amount due. (*Compare id.* at 13 ("**Due by 11/01/2020: \$440,061.71**."), *with id.* at 64 ("**Due by 12/01/2020: \$442,550.47**.").)  Third, the statement provided the same "**Bankruptcy Message**" on the left-hand side of the statement, that included a disclaimer that the statement is for "informational and compliance purposes only" and "not an attempt to collect a debt against you." (*Id.* at 64.)  This disclaimer designated the First Illinois Address for Ms. Berry to submit a written request "to stop receiving a mortgage statement." (*Id.*)

### *December 4, 2020*

Fay:   Fay sent Ms. Berry a letter "RE: Notice of Error" advising her "that research on the Notice of error you notified us about on [October 23, 2020] has not been completed." (*Id.* at 61.)  Fay did not specify which of Ms. Berry's letters Fay was in receipt of, or was responding to.  Fay informed Ms. Berry that Fay would continue to research the matter and would respond to Ms. Berry in writing within forty-five business days from the date of receipt of Ms. Berry's correspondence. (*Id.*)  Bankruptcy Disclaimer I appeared along the bottom margin of the page in smaller inconspicuous font. (*Id.*)  Fay's First Texas Address appeared at the bottom margin of the letter. (*Id.*)  This was the last communication from Fay that appears among the exhibits attached to Ms. Berry's Amended Motion.

### *December 28, 2020*

Fay:   The last communication from Fay that is part of the bankruptcy court record is a letter submitted by Fay as an exhibit to its Objection.  In the letter, Fay acknowledged receipt

of six of Ms. Berry's letters dated "September 15, 2020, October 12, 2020, October 19, 2020 (3 letters), and November 2, 2020." (Ex. A at 1, Notice of Filing, Bankr. No. 11-28881, ECF No. 91-1.) In this letter, Fay addressed Ms. Berry's "specific concerns" regarding the "above-referenced mortgage loan."[11] (*Id.*)

The first paragraph of the letter stated that Fay "did not list this loan correctly as a Real Estate Owned (REO) property. Therefore, the billing statement and hazard insurance notices were mailed out in error." (*Id.*) Furthermore, the second paragraph of the letter stated that the billing statement and hazard insurance notices were sent "for informational and compliance purposes only and did not seek to collect a debt against you." (*Id.*) Then, on the second page of this letter, Fay stated that "there was no evidence of a Hazard Insurance Notice being mailed to" Ms. Berry's attention and Fay's records indicated that "Force-Placed Insurance" expired as of September 17, 2020. (*Id.*) Bankruptcy Disclaimer I appeared along the bottom margin of the page in smaller inconspicuous font.

On January 21, 2021, after the bankruptcy court granted Ms. Berry's motion to reopen her bankruptcy case, Ms. Berry filed her amended motion to hold Fay and Wells Fargo in contempt and sought sanctions. On March 9, 2021, the bankruptcy court entered an order finding Fay in contempt and sanctioning Fay's acts that violated Ms. Berry's discharge. The bankruptcy court denied Ms. Berry's motion to hold Wells Fargo in contempt.

On March 28, 2021, Ms. Berry filed a timely notice of appeal. On April 6, 2021, after obtaining an extension of time, Fay filed its notice of cross-appeal.

## DISCUSSION

Section 524 of the Bankruptcy Code provides that a "discharge order 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset' a discharged debt." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019) (quoting 11 U.S.C. § 524(a)(2)). "The purpose of § 524(a) is to ensure that when a bankruptcy court enters an order discharging a debtor's outstanding debts, the debtor will be automatically protected against future attempts to collect on the discharged debts." *Isaacs v. DBI-ASG Coinvestor Fund, III, LLC* (*In re Isaacs*), 895 F.3d 904, 910 (6th Cir. 2018); *accord Hamilton v. Herr* (*In re Hamilton*), 540 F.3d 367, 373 (6th Cir. 2008) ("Section 524(a) is meant

---

[11]In this letter, the "above referenced property" cross-referenced a property located at 8563 Griffin Park Drive in Cordova, Tennessee, a different address than the Property's actual address.

to operate automatically, with no need for the debtor to assert the discharge to render the judgment void." (quoting 4 Collier on Bankruptcy ¶ 524.02[1], at 524-14.8 to 524-14.9 (Sept. 2005))).

Bankruptcy courts enforce discharge orders through their civil contempt power. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422-23 (6th Cir. 2000); *Michalski v. Coulson* (*In re Michalski*), 452 F. App'x 656, 658 n.2 (6th Cir. 2011) ("[A] debtor may recover damages for a violation of the discharge injunction in a contempt action."). The Bankruptcy Code authorizes "a court to impose civil contempt sanctions when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart*, 139 S. Ct. at 1801. In other words, a creditor may be held "in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Id.* at 1799. "This standard is generally an *objective* one." *Id.* at 1802. Under this "fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates a discharge order based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope." *Id.*

Accordingly, a court must first determine whether the acts in issue violated the discharge order's injunction that affords debtors protection against being held personally liable for discharged debts. *See In re Ragone*, 2021 WL 1923658, at *5 ("The contempt inquiry is a two-step one. First, a court must determine whether the creditor's actions violated the discharge injunction." (citing *In re Distefano*, 611 B.R. 100, 102 (Bankr. W.D. Mich. 2019))). If the acts violated the discharge order's injunction, the court must then evaluate whether the acts warrant civil contempt by determining if the creditor had any objectively reasonable basis for concluding that its acts were lawful. *See Taggart*, 139 S. Ct. at 1801; *In re Ragone*, 2021 WL 1923658, at *5 ("Second, the court must determine 'whether there was any objectively reasonable basis for believing that the [action] did not violate the discharge.'" (alteration in original) (quoting *In re Distefano*, 611 B.R. at 102)). If there was no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order, then a court is authorized to impose civil contempt sanctions. *Taggart*, 139 S. Ct. at 1801. "A debtor carries the burden of proving that the creditor committed a sanctionable violation of the discharge order," and that the

creditor should be held in contempt, by clear and convincing evidence.  *See Ragone*, 2021 WL 1923658, at *5; *see also Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998).**[12]**

A discharge order generally extinguishes a debtor's personal liability for pre-petition debts.  *See Taggart*, 139 S. Ct. at 1799.  However, "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."  *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991).  In this regard, the Bankruptcy Code and case law interpreting it recognize the difference between debt collection, which violates the discharge order's injunction, and lien enforcement, which is permitted post-discharge.

For example, the discharge injunction, § 524(a)(2), applies to attempts to collect a "debt as a personal liability of the debtor."  However, the exception for the collection of periodic mortgage payments, § 524(j), leaves intact the pursuit of *in rem* relief solely against the property, and in pursuit of that *in rem* relief, allowable contact with the debtor is limited to "seeking or obtaining periodic payments associated with a valid security interest in lieu of" foreclosure.  11 U.S.C. § 524(j); *see also Best v. Nationstar Mortg. LLC* (*In re Best*), 540 B.R. 1, 6, 9-11 (B.A.P. 1st Cir. 2015).**[13]**  In other words, § 524(j) applies to communications that a secured

---

**[12]***Taggart* did not discuss whether the clear-and-convincing standard is still appropriate on a civil contempt motion.  Courts dealing with such motions in this circuit continue to use *Glover*'s clear-and-convincing standard. *See*, *e.g.*, *Bentley v. OneMain Fin. Grp., LLC* (*In re Bentley*), No. 19-8026, 2020 WL 3833069, at *6 (B.A.P. 6th Cir. July 8, 2020) (citing *In re Jackson*, 554 B.R. 156, 164-65 (B.A.P. 6th Cir. 2016)), *aff'd*, No. 16-4021, 2017 WL 8160941 (6th Cir. Oct. 19, 2017); *In re City of Detroit*, 614 B.R. 255, 265-66 (Bankr. E.D. Mich. 2020); *In re Cantrell*, 605 B.R. 841, 853 (Bankr. W.D. Mich. 2019).

**[13]**Section 524(j) generally applies to debtors who did not redeem the collateral constituting their principal residences or reaffirm the debts secured by the collateral constituting their principal residences, otherwise known as a "ride-through."  *In re Bentley*, 2020 WL 3833069, at *6 ("The concept that a lien 'rides through' bankruptcy is axiomatic.").  Section 524(j) provides:

> [§ 524(a)(2)] does not operate as an injunction against an act by a creditor that is the holder of a secured claim, if--
>
> (1) such creditor retains a security interest in real property that is the principal residence of the debtor;
>
> (2) such act is in the ordinary course of business between the creditor and the debtor; and
>
> (3) such act is limited to seeking or obtaining periodic payments associated with a valid security interest in lieu of pursuit of in rem relief to enforce the lien.

11 U.S.C. § 524(j).

creditor sends to discharged debtors who remained in their homes, and § 524(a) applies to discharged debtors who left their homes. *See Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1042-43 (11th Cir. 2019); *see also Nyamusevya v. CitiMortgage, Inc.* (*In re Nyamusevya*), No. 19-8027, 2021 WL 193965, at \*5 (B.A.P. 6th Cir. Jan. 20, 2021) (noting that a bankruptcy discharge precludes a creditor from collecting its debt directly from a debtor (*in personam*) but does not prevent a creditor from liquidating a debtor's property to satisfy the debt (*in rem*)).

In this case, Ms. Berry's personal liability was discharged. Further, all right, title, and interest in the Property was extinguished through foreclosure, and possession of the Property was relinquished. These facts were not in dispute. Accordingly, "this is not a case in which the creditor was endeavoring 'to walk the fine-line between liquidating its collateral (which is permissible) and collecting its debt as a personal liability of the Debtor (which is not).'" *In re Distefano*, 611 B.R. at 105 (citations omitted); *cf. Todt v. Ocwen Loan Servicing, LLC* (*In re Todt*), 567 B.R. 667, 680 (Bankr. D.N.H. 2017) ("The Bankruptcy Code prohibits a party that has 'no contractual or *in rem* relationship with a discharged debtor' from sending the debtor letters based on a relationship that no longer exists." (citation omitted)); *Lemieux v. America's Servicing Co.* (*In re Lemieux*), 520 B.R. 361, 369-70 (Bankr. D. Mass. 2014) (collecting cases finding § 524(j) inapplicable to property that was not the principal residence of the debtor when the communication was sent); *Parente v. Fay Servicing, LLC*, No. 1:19-cv-04138, 2020 WL 1182714, at \*7 (N.D. Ill. Mar. 12, 2020) (recognizing that "[s]ection 524(j) extricates [creditor's] collection activities from a contempt citation" when taken against property subject to a mortgage). Here, Wells Fargo and Fay were not acting on behalf of a secured creditor who held a valid security interest in Ms. Berry's residence. Ms. Berry was not a debtor who resided in, or had any interest in, the Property. Therefore, § 524(j)'s "mortgage collection" safe harbor provision did not apply to Wells Fargo's and Fay's correspondence because the Deed of Trust was extinguished in the foreclosure.

### I. Wells Fargo.

Ms. Berry first argues that the bankruptcy court erred by failing to hold Wells Fargo in contempt for assigning the Deed of Trust and the "act" of transferring servicing of the loan.

(B.A.P. Pro Se Appellant's Br. at 5, Aug. 17, 2021, BAP No. 21-8005/8007, ECF No. 7 ("[T]he assignment, debt's sale for profit, and all mailings to include a servicing transfer letter . . . constituted acts to *commence* collection of the discharged debt[.]"); *see also* B.A.P. Pro Se Appellant's Reply Br. at 14-15, Oct. 29, 2021, BAP No. 21-8005/8007, ECF No. 13.)  Wells Fargo argues the bankruptcy court did not abuse its discretion in finding that Wells Fargo, as the servicer, did not violate the discharge order when the Deed of Trust was assigned.

This Panel finds that the bankruptcy court did not clearly err.  BNY was the holder of the Deed of Trust.  BNY, not Wells Fargo, assigned the Deed of Trust.[14]  (Ex. 4 at 1, Obj. to Mot. to Reopen, Bankr. No. 11-28881, ECF No. 52-4.)  Wells Fargo was the servicer of record at the time of the transfer.  On appeal, Ms. Berry argues the bankruptcy court erred because she specifically alleged that "Wells Fargo on behalf of BONY" transferred the Property or debt by pointing to paragraph four of her declaration attached to her motion for sanctions.  Paragraph four cites an "exhibit fourteen" that was not attached to her Exhibits to Amended Motion.  Ms. Berry nonetheless argues this allegation in her declaration allowed the bankruptcy court to "infer [BNY] is liable."  However, Ms. Berry failed to provide any evidence that Wells Fargo, as the servicer, violated the discharge order's injunction when BNY assigned the Deed of Trust.  Accordingly, Ms. Berry did not meet her burden in proving that Wells Fargo should be held in contempt by clear and convincing evidence.  Therefore, the bankruptcy court did not abuse its discretion in concluding that Wells Fargo did not transfer the Deed of Trust.

To the extent that Ms. Berry is arguing that Wells Fargo should be held liable for the actions of BNY under a theory of agency, this Panel disagrees.  An agent is not liable to a third party for acts committed by the agent's principal. Restatement (Third) of Agency § 7.01 cmt. d (Am. L. Inst. 2006) ("An agent is not subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct; there is no principle of 'respondeat inferior.'"); 3 Am. Jur. 2d *Agency* § 280, Westlaw (database updated August 2022) ("[W]here a

---

[14]Upon completion of a foreclosure sale, the sale and trustee's deed "have the effect of divesting the title of the deed of trust grantor and vesting it in the purchaser." *Worldwide Prop. Hub LLC v. League*, No. W2020-00605-COA-R3-CV, 2020 WL 7421702, at *4 (Tenn. Ct. App. Dec. 18, 2020) (citation omitted).  The validity of BNY's assignment of the Deed of Trust to NRZ is not at issue.  The issue here is whether Wells Fargo attempted to collect a debt when BNY assigned the Deed of Trust to NRZ.

defendant acts as an agent for a known principal, the defendant-agent incurs no liability for a principal's breach of duty."); 2A C.J.S. *Agency* § 398, Westlaw (database updated August 2022) ("An agent who does not play any part in the tortious conduct of his or her principal, and who lacks knowledge of the principal's misconduct, is not liable for harm resulting to third persons." (footnotes omitted)). For example, under Tennessee law, "a known agent is bound by the contracts of his or her principal only when the 'circumstances show that the agent intended to be bound or assumed the obligations under the contract.'" *Menuskin v. Williams*, 145 F.3d 755, 770 (6th Cir. 1998) (quoting *Holt v. Am. Progressive Life Ins. Co.*, 731 S.W.2d 923, 925 (Tenn. Ct. App. 1987)).

Moreover, the assignment of a mortgage is not usually considered an act to collect a debt. *See*, *e.g.*, *In re Samuels*, 415 B.R. 8, 22 (Bankr. D. Mass. 2009) (recognizing that postpetition transfer of a recorded mortgage was not an act to collect a debt and did not violate the automatic stay). Thus, it has been held that a transfer of servicing rights does not warrant sanctions for violating the discharge order. *See*, *e.g.*, *In re Zine*, 521 B.R. 31, 41 (Bankr. D. Mass. 2014) (noting that debtor's allegation that the creditor negligently transferred mortgage servicing rights to a servicer, in and of itself, did not warrant sanctions for violating the discharge injunction).

In support of her argument that the assignment of the Deed of Trust violated § 524(a)(2), Ms. Berry cites to nonprecedential authority holding that the discharge order applies to the sale or transfer of a discharged debt. *See*, *e.g.*, *Laboy v. Firstbank P.R.* (*In re Laboy*), Adv. No. 09-00047, 2010 WL 427780, at *6 (Bankr. D.P.R. Feb. 2, 2010) (unsecured loan); *In re Nassoko*, 405 B.R. 515, 520-21 (Bankr. S.D.N.Y. 2009) (unsecured loan); *In re Lafferty*, 229 B.R. 707, 713-14 (Bankr. N.D. Ohio 1998) (unsecured loan). *But see Finnie v. First Union Nat'l Bank*, 275 B.R. 743, 746 (E.D. Va. 2002) (holding that a sale of unsecured credit card debt did not violate the discharge injunction but efforts to collect by the purchaser of discharged debt may be a violation of the injunction). However, these authorities are distinguishable, and Ms. Berry's argument on this point must be rejected. The cases on which Ms. Berry relies concerned unsecured debts that had been discharged, and the purpose for the sale of the debts was found in part to be collection of the discharged debts. Here, it appears a mistake was made in transferring the servicing rights to an extinguished mortgage. But that appears to have been BNY's mistake,

not Wells Fargo's. Although Ms. Berry attempts to reconcile this quandary by arguing that Wells Fargo should be liable for BNY's actions, as noted above, an agent is not liable to a third party for acts committed by the agent's principal. *See* Restatement (Third) of Agency § 7.01 cmt. d; 3 Am. Jur. 2d *Agency* § 280; 2A C.J.S. *Agency* § 398. Accordingly, the bankruptcy court did not abuse its discretion in declining to find that Wells Fargo either transferred the Deed of Trust or was liable for the transfer. As discussed above, there is no basis for disturbing that conclusion.

Ms. Berry next argues that Wells Fargo's communications were acts to collect a debt.

As a preliminary matter, Wells Fargo asserts that Ms. Berry waived this issue because she first raised it in her opening brief, after failing to designate it in her Statement of Issues under Federal Rule of Bankruptcy Procedure 8009.[15] The Sixth Circuit has not addressed the concept of waiver under Rule 8009. *Cf. Joelson v. Brown* (*In re Brown Fam. Farms, Inc.*), 872 F.2d 139, 142 (6th Cir. 1989) ("[U]nder Bankruptcy Rules 8001 and 8010, the district court could, within its discretion, deem [an issue] waived if it believed that the issues as presented *and* argued in the [appellate] brief did not effectively contest the [underlying determinations of the bankruptcy court]."). There is nonbinding case law holding that a failure to include a particular issue in the "statement of issues to be presented" constitutes a waiver. *See McClendon v. Springfield* (*In re McClendon*), 765 F.3d 501, 506 n.14 (5th Cir. 2014) ("[E]ven if an issue is argued in the bankruptcy court and ruled on by that court, it is not preserved for appeal under Bankruptcy Rule [8009] unless the appellant includes the issue in its statement of issues on appeal." (first alteration in original) (citation omitted)); *City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC* (*In re Am. Cartage, Inc.*), 656 F.3d 82, 90-91 (1st Cir. 2011) (noting that the rationale behind requiring an issue to be included in the statement of issues to prevent waiver was sound); *Snap-On Tools, Inc. v. Freeman* (*In re Freeman*), 956 F.2d 252, 255 (11th Cir. 1992) ("An issue that is not listed pursuant to [Rule 8009] and is not inferable from the issues that are listed is deemed waived and will not be considered on appeal."). On the other hand, there is authority to

---

[15]The December 2014 amendments to the Federal Rules of Bankruptcy Procedure renumbered several Rules, including Rule 8006, which is now Rule 8009. References to Rule 8006 have been altered to reflect the current rule number.

the contrary. *See Office of the U.S. Tr. v. Hayes* (*In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.*), 104 F.3d 1147, 1148 (9th Cir. 1997) ("We hold that Bankruptcy Rule [8009] does not limit a party's ability to appeal from a bankruptcy court's judgment. This document, filed with the trial court clerk, does not impact upon issue statements [filed in the court of appeals or] required by the court of appeals.").

Whether Ms. Berry waived this issue need not be decided, because the argument fails even if this Panel treats it as properly preserved. Wells Fargo sent Ms. Berry: (1) a notice that servicing rights were being transferred; (2) a final escrow review statement; and (3) responses[16] to her inquiries. Correspondence that is "informational in nature, even if they include a payoff amount, generally [is] not actionable if they do not demand payment." *In re Todt*, 567 B.R. at 676. Additionally, "correspondence regarding the servicing transfer [that] does not seek payment of a debt and also includes disclaimer language" does not violate the discharge order. *In re Cantrell*, 605 B.R. at 859; *accord In re Brown*, 481 B.R. at 359 (finding that notices informing the debtor of a change in loan servicer, even though the payoff amount was included, were informational and did not violate the debtor's discharge); *Mele v. Bank of Am. Home Loans* (*In re Mele*), 486 B.R. 546, 550-51, 557 (Bankr. N.D. Ga. 2013) (finding "informational forms" that provided information regarding a change in servicer for a debtor's loan did not violate the debtor's discharge).

Here, the overall tenor of Wells Fargo's correspondence was informational. The letters did not include a payoff amount or an "amount due." Accordingly, the bankruptcy court did not abuse its discretion in finding that Ms. Berry failed to meet her burden of providing clear and convincing evidence that Wells Fargo's correspondence were acts to collect a discharged debt.

## II. Fay.

Ms. Berry argues that the bankruptcy court abused its discretion in finding that Fay's actions only violated the discharge order after October 26, 2020. Instead, Ms. Berry insists that

---

[16]Ms. Berry's own initiation of communication with Wells Fargo resulted in additional contact, and the fact that a response from Wells Fargo did not answer Ms. Berry's questions "to her satisfaction does not transform the correspondence into a violation of the discharge injunction." *See Brown v. Bank of Am.* (*In re Brown*), 481 B.R. 351, 359 (Bankr. W.D. Pa. 2012).

Fay, as servicer for NRZ, violated the discharge order starting on April 10, 2020, when the Deed of Trust was assigned to NRZ.  Ms. Berry then argues Fay's violations resumed on August 27, 2020, when the servicing rights were transferred to Fay.**17**  Therefore, according to Ms. Berry, the damages should be calculated for each violative act starting on April 10, 2020.

Ms. Berry's argument that Fay violated the discharge on April 10, 2020, fails.  Ms. Berry did not provide clear and convincing evidence that Fay was the loan servicer at the time of the BNY transfer to NRZ.  Thus, there was no evidence that the assignment from BNY to NRZ was an act by Fay to collect a debt.  For the actions of BNY, or NRZ, to somehow be imputed to Fay, Ms. Berry had to initially show that Fay was servicer of the loan when the transfer was made.**18**  The record contains no such evidence.  The only evidence regarding the date the servicing rights were transferred is found in (1) Wells Fargo's August 27, 2020 notice that servicing rights were being transferred to Fay, (Exs. to Am. Mot. at 2); (2) Fay's notice of servicing transfer (*id.* at 14 ("The servicing of your mortgage loan is being transferred, effective 09/17/20)); and (3) in Fay's Objection to Ms. Berry's motion for contempt (Objection to Mot. for Contempt at 4, Bankr. No. 11-28881-L, ECF No. 89 ("NRZ purchased the Loan in April 2020 and Fay began servicing on behalf of NRZ in September 2020.")).  There is no evidence to establish an earlier transfer date.  Accordingly, the bankruptcy court did not abuse its discretion in declining to hold Fay liable for actions that occurred before Fay acquired servicing rights.

On cross-appeal, Fay argues that the bankruptcy court abused its discretion in finding Fay's acts violated the discharge order's injunction by (1) disregarding Fay's internal process; (2) assuming Fay received Ms. Berry's correspondence the same day it was drafted; (3) assuming Fay could investigate and immediately modify the account; and (4) assuming Fay

---

**17**Ms. Berry's Reply Brief raises new arguments against NRZ.  Arguments made for the first time in a reply brief are forfeited.  *See Trs. of Operating Eng'rs Loc. 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 380 n.6 (6th Cir. 2019) (citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)); *see also Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 317 (6th Cir. 2021) (citing *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 522 (6th Cir. 2019)); *Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) ("Time, time, and time again, we have reminded litigants that we will treat an argument as forfeited when it was not raised in the opening brief." (internal quotation marks and citations omitted)).

**18**First, this Panel notes that it does not endorse the sufficiency of such an argument, even if supported by evidence.  Second, as mentioned above, an agent generally is not liable to a third party for acts committed by the agent's principal.

knew property records were online. Fay's arguments that the bankruptcy court relied on clearly erroneous findings of fact are unpersuasive and must be rejected for the reasons set forth below. *See*, *e.g.*, *Pertuso*, 233 F.3d at 424; *Rijos v. Banco Bilbao Vizcaya* (*In re Rijos*), 263 B.R. 382, 392 (B.A.P. 1st Cir. 2001) ("[T]he 'computer did it' defense is not viable[.]"); *DiBattista v. Selene Fin. LP* (*In re DiBattista*), 615 B.R. 31, 40 n.11 (S.D.N.Y. 2020) ("As the Bankruptcy Court noted, in this age of electronic systems it is egregious for a mortgage servicer not to do basic research before taking action.").

Whether mortgage-related correspondence is an enjoined act to collect a discharged debt "depends solely on the purpose for which the [correspondence] appears to have been sent, as assessed from the four corners of the document." *In re Biery*, 543 B.R. 267, 287 (Bankr. E.D. Ky. 2015); *accord In re Cantrell*, 605 B.R. at 854. For this reason, a "disclaimer" is not entirely dispositive. *Kirby v. 21st Mortg. Corp.* (*In re Kirby*), 599 B.R. 427, 441 (B.A.P. 1st Cir. 2019); *In re Todt*, 567 B.R. at 679 ("The use of a pro forma bankruptcy disclaimer is not a 'get out of jail free' card."); *In re Cantrell*, 605 B.R. at 856 (noting that "the presence, prominence, and clarity of disclaimer language in post-discharge communications with debtors is often a significant factor" in determining whether a violation of the discharge injunction occurred); *Whitaker v. Bank of Am.* (*In re Whitaker*), Adv. No. 13-5008, 2013 WL 2467932, at *8 (Bankr. E.D. Tenn. June 7, 2013) (recognizing that disclaimer language does not insulate a communication from being an improper demand for payment); *In re Zine*, 521 B.R. at 40 ("A creditor cannot avoid the consequences of violating the automatic stay or discharge injunction simply by burying an alternative explanation for a clear demand for payment in fine print.").

Moreover, as previously discussed, Fay is not protected by § 524(j) because there was no mortgage or loan, and Ms. Berry had no possessory interest in the Property. As Collier notes, § 524(j) is "limited to seeking and obtaining periodic payments in lieu of *in rem* relief." 4 Collier on Bankruptcy ¶ 524.09 (Richard Levin & Henry J. Sommer eds., 16th ed.). Here, BNY had already exercised its *in rem* remedies; therefore, § 524(j) offers Fay no basis for asserting a statutory blessing for its communications with Ms. Berry.

Fay argues that there is no evidence that the Phone Message on October 27, 2020, included attempts to collect a debt.  Fay also argues the three pieces of routine correspondence that Ms. Berry received after October 26, 2020, did not attempt to collect a debt.  Accordingly, Fay argues, these contacts are not violations of the discharge order.

The Phone Message left by Fay on October 27, 2020, indicated Fay's intent to file suit.  As previously explained, determining whether a creditor violated the discharge injunction is fact-specific and requires consideration of all of the circumstances of a particular case.  Ms. Berry's sworn declaration states that Fay's Phone Message included a threat of intent to file suit.  Ms. Berry's November 2, 2020, letter to Fay referenced the Phone Message that included a threat of intent to file suit.  Notably, the Phone Message was made at or about the time Fay sent the formal notice of default.  When analyzing this evidence, the bankruptcy court did not clearly err in finding the Phone Message was for the purpose of collecting a debt.

The first piece of correspondence Fay disputes is the formal notice of default dated October 28, 2020.  A "Notice of Default and Right to Cure Default" has been held to violate the discharge order, despite including a disclaimer, where the letter stated that the debtor may be held liable for any deficiency balance not realized from the sale of the property.  *See Fauser v. Green Tree Servicing, LLC* (*In re Fauser*), 545 B.R. 907, 915 (Bankr. S.D. Tex. 2016).  The October 28, 2020, letter was a formal notice of default that indicated it was a "demand for payment" and also informed Ms. Berry that Fay "may pursue a deficiency judgment, if permitted by applicable law."  (Exs. to Am. Mot. at 24.)  A formal notice of default may make sense in "the context of preventing foreclosure."  *White-Lett v. Bank of N.Y. Mellon Corp.* (*In re Lett*), 635 B.R. 713, 723 (Bankr. N.D. Ga. 2022); *accord In re Cantrell*, 605 B.R. at 857-58 (finding that notices regarding potential foreclosure or acceleration of the loan "were solely for purpose of obtaining payment in lieu of foreclosure proceedings").  Here, however, the notice of default was sent after Ms. Berry's personal liability had been discharged, the Property had been foreclosed, and Ms. Berry had relinquished possession of the Property.  *See In re Todt*, 567 B.R. at 680 ("[P]urposeless letters relating to past debts and obligations constitute harassment proscribed by the discharge injunction." (citation omitted)).  The October 28, 2020 notice of default included language that demanded payment to prevent acceleration, foreclosure, and sale

based upon an asserted failure to make monthly payments for a property that had been foreclosed. Thus, it was not erroneous for the bankruptcy court to find that this "notice" was an attempt to collect a debt.

The second piece of correspondence that Fay disputes is the notice for hazard insurance dated November 9, 2020. Ms. Berry had no obligation to obtain hazard insurance. *See*, *e.g.*, *In re Lemieux*, 520 B.R. at 367 (citing *In re Whitaker*, 2013 WL 2467932, at *10). This notice for hazard insurance did not include any additional information such as a disclaimer or explanation to indicate that it was sent for informational purposes. *Id.* To the contrary, the November 9, 2020 hazard insurance notice demanded certain actions from Ms. Berry, including that she must pay Fay for any insurance Fay purchased, despite Ms. Berry having no property interest to insure. *See id.* at 367-68; *see also In re Perviz*, 302 B.R. 357, 366 (Bankr. N.D. Ohio 2003) (finding that insurance letters sent by creditor stating "[a]t your expense, we have purchased insurance to protect our interest" were aimed at collecting a debt (alteration in original)). Thus, the practical effect of the second insurance mailing was to collect a debt against Ms. Berry, and it was not erroneous for the bankruptcy court to make such a finding.

The third piece of correspondence that Fay disputes is the mortgage statement dated November 10, 2020. As the *Cantrell* court held, determining whether actions and communications, such as mortgage statements, are aimed at collecting a debt is fact-specific and requires consideration of all of the circumstances of a particular case. 605 B.R. at 854.

By November 10, 2020, Ms. Berry had already sent Fay a written request to stop sending mortgage statements. Despite Ms. Berry's request, the mortgage statement sent by Fay was effectively coercive because it included a "payment due date," "amount due," and "total amount due." *See In re Lett*, 635 B.R. at 720-23. The word "due" is "a word that indicates an attempt to collect a debt." *In re Lemieux*, 520 B.R. at 366. Additionally, the bottom portion of the mortgage statement stated that a payment was "due by 12/01/2020" and included an address for sending payment akin to a payment coupon. *See id.*; *Cousins v. CitiFinancial Mortg. Co.* (*In re Cousins*), 404 B.R. 281, 287 (Bankr. S.D. Ohio 2009) ("The payment coupon, with a place to write in the amount enclosed and address for sending payments, has no other purpose that the court can conceive except to collect the debt outside of the bankruptcy case[.]"); *Forson v.*

*Nationstar Mortg., LLC* (*In re Forson*), 583 B.R. 704, 713-14 (Bankr. S.D. Ohio 2018) (finding that a mortgage statement that specified the amount of payment and when it was due, a late charge, and past due amounts was an unlawful attempt to collect a discharged debt). Nevertheless, some courts have found that a mortgage statement with an "amount due" and a "due date" is not an unlawful attempt to collect a discharged debt if the payment coupon was marked in large lettering as "voluntary," which indicated the statement was not demanding payment. *See*, *e.g.*, *Roth v. Nationstar Mortg., LLC* (*In re Roth*), 935 F.3d 1270, 1276 (11th Cir. 2019) (finding that a mortgage statement including "amount due" and a "due date" that also included a payment coupon marked in large conspicuous lettering as "voluntary" was not an unlawful attempt to collect a discharged debt). Here, the mortgage statement sent by Fay did not include any indication that the payment would be voluntary. Thus, the bankruptcy court did not err in finding that the second mortgage statement dated November 10, 2020, was an attempt to collect a debt.

For these reasons, when analyzing all the evidence, the bankruptcy court did not clearly err in finding that Fay's act of leaving the Phone Message on October 27, 2020, and sending the letters dated October 28, November 9, and November 10, 2020, were attempts to collect a debt from Ms. Berry in violation of § 524(a)(2).

The bankruptcy court also did not err by finding that there was no fair ground of doubt that Fay's acts violated the discharge order. Comparing Wells Fargo's response time with Fay's supports the bankruptcy court's conclusion that Fay's actions were not objectively reasonable. On September 15, 2020, Ms. Berry informed both Fay and Wells Fargo that she had received her discharge in December 2011. At that time, she also informed both Fay and Wells Fargo that the Property was foreclosed in May 2015 and that she vacated the Property in June 2018. Fay stated that it received Ms. Berry's letter dated September 15, 2020. The letter dated September 15, 2020, provided Fay and Wells Fargo with the same information.

On October 27, 2020, Wells Fargo acknowledged that the Property was foreclosed. In addition to providing the responses acknowledging Ms. Berry's letter disputing the debt, Wells Fargo stopped sending Ms. Berry letters. Wells Fargo responded to the situation in about forty-

two days. Fay, on the other hand, did not acknowledge its error until December 28, 2020, more than ninety days after receiving the September 15, 2020 letter.

Fay continued to send Ms. Berry letters after it received a copy of Ms. Berry's first letter dated September 15, 2020, originally addressed to Wells Fargo. (Ex. A, Notice of Filing, Bankr. No. 11-28881, ECF No. 91-1 ("Dear [Ms. Berry]: [Fay] received your [letter] dated September 15, 2020[.]").) Beginning on October 5, 2020, Fay received additional letters essentially repeating the information originally conveyed in the letter dated September 15, 2020. In these letters, Ms. Berry explained that the mortgage debt had been discharged and the Property was foreclosed and surrendered, and she enclosed a copy of the discharge order. Moreover, she repeatedly requested that Fay cease and desist any and all written and verbal communications. Although Fay's letters said it would cease communications if Ms. Berry so requested, the communications did not cease.

Even if the letter Fay received, dated September 15, 2020, did not eliminate all fair ground of doubt as to whether the discharge order barred Fay's correspondence, there was no objectively reasonable basis for Fay to continue sending Ms. Berry correspondence after she sent Fay the letters dated October 5, October 12, October 19, and November 2, 2020, enclosing the discharge order and providing a further explanation that the Property had been foreclosed and surrendered. The bankruptcy court found that after Fay responded to Ms. Berry on October 26, 2020, informing her Fay received Ms. Berry's letter(s), there was no objectively reasonable basis for concluding Fay's conduct might be lawful. The bankruptcy court had issued an order granting Ms. Berry a discharge. Moreover, the Property had been foreclosed, and Ms. Berry had no further right, title, or interest in the Property, which had been surrendered. These factual findings are supported by the record. Thus, the bankruptcy court did not abuse its discretion in finding that Fay violated the discharge injunction without any objectively reasonable basis for concluding that its acts were lawful.

Fay's letter dated December 28, 2020, acknowledged its error, stating that the "billing statement and hazard insurance notices were mailed out in error" and Fay would "cease all communications with you" and "no further statements will be mailed to you going forward." (Ex. A, Notice of Filing, Bankr. No. 11-28881, ECF No. 91-1.) On cross-appeal, Fay essentially

argues that its response to its violations of the discharge order was reasonable, asserting that it "acknowledged its error" after completing its investigation, and its response to learning of the discharge was to stop actions violating the discharge injunction. Notably, the sanctions period ended on December 28, 2020.

Under the "abuse of discretion" standard of review, the question is not how the reviewing court would have ruled on the issue, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ on the issue, then there is no abuse of discretion. *In re Bagsby*, 40 F.4th at 745; *In re Ragone*, 2021 WL 1923658, at *2. The bankruptcy court found that the violations of the discharge injunction ended on December 28, 2020, and further found that Fay's acknowledgement of error did not expunge Fay's prior conduct. The record supports the bankruptcy court's conclusions. Accordingly, the bankruptcy court did not err by finding that there was no fair ground of doubt that Fay's acts violated the discharge order and warranted contempt sanctions.

For all these reasons, the bankruptcy court's decision that Fay violated the discharge injunction is affirmed.

### III. The Amount of Contempt Sanctions Awarded.

The Panel now turns to the issue of whether the bankruptcy court abused its discretion in awarding damages for Fay's enjoined acts to collect a discharged debt from Ms. Berry.

Ms. Berry argues the bankruptcy court abused its discretion in the amount awarded, disputing the (1) actual damages awarded, (2) failure to award emotional distress damages, and (3) amount of the contempt sanctions awarded.

Similarly, Fay argues the bankruptcy court abused its discretion in the amount awarded, disputing the (1) actual damages awarded, (2) assessment of civil contempt sanctions in a compensatory manner, and (3) amount of the contempt sanctions awarded.

Section 524 directs that a bankruptcy discharge order operates as an injunction against the collection of discharged debt. 11 U.S.C. § 524(a)(2). Section 105 empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the

provision of this title." 11 U.S.C. § 105(a). Together, these provisions bring with them the "old soil" that has long governed how courts enforce injunctions and "authorize a court to impose civil contempt sanctions[.]" *Taggart*, 139 S. Ct. at 1801. "Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction." *Id.* (citation omitted). "Civil contempt, imposed under the court's section 105 powers, is the normal sanction for violations of the discharge injunction." 4 Collier on Bankruptcy ¶ 524.02[2][c] (Richard Levin & Henry J. Sommer eds., 16th ed.).

Bankruptcy courts may award actual damages for violations of § 524's injunction. *Taggart*, 139 S. Ct. at 1801; *In re Ragone*, 2021 WL 1923658, at *6. "Actual damages" and "compensatory damages" are synonymous terms and are intended to compensate a plaintiff for its loss. *McMillian v. F.D.I.C.*, 81 F.3d 1041, 1055 n.15 (11th Cir. 1996) (citing 25 C.J.S. *Damages* § 2 (1966)); 22 Am. Jur. 2d *Damages* § 25, Westlaw (database updated August 2022). "Because [a] violation of the discharge injunction is a transgression against the bankruptcy court's order, broad discretion is invested in the court in selecting an appropriate sanction." *In re Ragone*, 2021 WL 1923658, at *6 (alteration in original) (citation omitted). Bankruptcy courts have sanctioned creditors found in contempt by awarding actual damages and imposing mild noncompensatory sanctions. *See*, *e.g.*, *Ridley v. M & T Bank* (*In re Ridley*), 572 B.R. 352, 366 (Bankr. E.D. Okla. 2017) (awarding $620.00 in actual damages for lost wages in enforcing discharge injunction); *In re Vanamann*, 561 B.R. 106, 130-31 (Bankr. D. Nev. 2016) (awarding noncompensatory sanction of $5,000.00 because even after loan servicer "became aware that the Debtor no longer occupied the Slipstream Property and no longer owned the Slipstream Property, it continued to send Informational Statements to the Debtor long after knowing that she had discharged her personal liability on the Promissory Note"). The imperative question under the "abuse of discretion" standard of review is whether a reasonable person could agree with the bankruptcy court's decision. *In re Bagsby*, 40 F.4th at 745; *In re Ragone*, 2021 WL 1923658, at *2. For the reasons that follow, we find that neither Ms. Berry nor Fay established that the sanctions imposed by the bankruptcy court amounted to an abuse of its discretion under this standard.

**A. Compensatory Damages.**

First, Ms. Berry and Fay both dispute, from opposite perspectives, the actual damages awarded.  Both positions are rejected because the bankruptcy court did not clearly err in its award of actual damages.  Ms. Berry submitted a declaration under the penalty of perjury identifying her actual damages, including the number of trips she made to the post office.  Fay argues that the bankruptcy court erred by awarding actual damages based on Ms. Berry's affidavit alone, without backup documentation of loss or adequate proof.  Further, Fay argues that an award based on multiple letters and trips to the post office, when one letter and one trip would have sufficed, was excessive.  Fay, however, failed to provide evidence rebutting Ms. Berry's declaration.  Additionally, Fay's own letters designated a number of different addresses for Ms. Berry to send correspondence, which effectively invited Ms. Berry to incur the costs to which Fay now objects.  Finally, although Fay said it would cease communications if Ms. Berry requested it, Fay did not stop sending her letters.  Fay's own behavior demonstrates that a single letter was not sufficient to induce Fay to stop its unwarranted behavior.  The bankruptcy court did not err by accepting Ms. Berry's affidavit as sufficient proof.  *See*, *e.g.*, *Bankers Healthcare Grp., Inc. v. Bilfield* (*In re Bilfield*), 494 B.R. 292, 303 (Bankr. N.D. Ohio 2013) (awarding $609.00 in actual damages based on the debtors' undisputed testimony that they incurred parking charges and copying costs).

On the other hand, Ms. Berry argues that additional actual damages were warranted because Fay was in contempt starting on April 10, 2020.  As discussed above, the bankruptcy court did not abuse its discretion in finding Fay's contemptuous acts commenced only after October 26, 2020, and there is no basis for disturbing that finding.[19]  Accordingly, the bankruptcy court did not abuse its discretion in awarding actual damages for Ms. Berry's expenses in bringing the facts to Fay's attention.

Second, Ms. Berry argues the bankruptcy court abused its discretion when it failed to award her "emotional distress [actual] damages." (B.A.P. Pro se Appellant's Br. at 13 (alteration

---

[19]Ms. Berry also argues that the bankruptcy court clearly erred in failing to award $177,000.00 in unlawful profits for the assignment of the Deed of Trust.  This claim for damages is not causally related to any harm caused by Fay's correspondence found to be in violation of the discharge order.  Accordingly, this argument is rejected.

in original).) There is a split of authority as to whether a debtor may be awarded compensatory damages for emotional distress when a violation of the automatic stay or discharge injunction has been established. *See In re Cantrell*, 605 B.R. at 858 n.8 (citing cases). Even courts that allow such damages require some corroborating evidence to support the allegation as well as a close causal connection between the act and any emotional harm suffered. *Id.* Ms. Berry did not present corroborating evidence of the harm she suffered. Accordingly, without reaching the question whether emotional distress damages are allowable in this circuit, the Panel finds that the bankruptcy court did not abuse its discretion in declining to award such damages.

On cross-appeal, Fay argues that the bankruptcy court did in fact award compensatory damages for Ms. Berry's emotional distress. Fay argues that doing so was an erroneous application of the law and therefore constituted an abuse of discretion. Ms. Berry's amended motion requested an "undetermined amount of emotional distress damages." (Am. Mot. at 18, Bankr. No. 11-28881, ECF No. 81.) Additionally, she specifically requested $1,000.00 per letter and $100.00 per day from the date of the violation to the date of compliance. (*Id.*) The bankruptcy court found Ms. Berry's request for damages for her emotional distress to be a "mild yet reasonable measure of damages for the Debtor's emotional distress caused by the improper collection actions." (Order on Am. Mot. at 24, Bankr. No. 11-28881-L, ECF No. 100.) Even though this sentence in the order may reflect consideration of the emotional distress argument in determining to award punitive damages, it is clear that there were only two awards—$449.72 for actual damages and $10,300.00 for punitive damages. No amount was awarded for compensatory damages for emotional distress. (*Id.* at 25.)

A court speaks only through its orders. *United States v. Garcia*, 312 F. App'x 801, 808 n.3 (6th Cir. 2009) (collecting cases). The bankruptcy court awarded $1,000.00 for each communication that clearly violated the discharge injunction ($4,000.00) and $100.00 for each day between October 26, 2020, when Fay acknowledged receipt of Ms. Berry's letter(s), and December 28, 2020, when Fay finally acknowledged its error ($6,300.00). (Order on Am. Mot. at 24-25, Bankr. No. 11-28881-L, ECF No. 100.) The bankruptcy court's order states that the damages were awarded as a sanction for Fay's contempt. The bankruptcy court did not award any compensatory damages for emotional distress. Rather, the order specifies that punitive

damages of $10,300.00 were awarded due to Fay's contempt for violating the discharge order. There is a "legal distinction between compensatory damages for emotional distress, and noncompensatory sanctions for causing emotional distress." *In re Biery*, 543 B.R. at 296. Here, the bankruptcy court clearly awarded noncompensatory punitive damages. Fay's argument to the contrary is rejected.

## B. Noncompensatory Sanction.

Lastly, Fay argues that sanctions were not authorized,[20] or in the alternative, that the sanctions awarded here were "serious" and thus not appropriate. Bankruptcy courts may award a noncompensatory sanction for contumacious behavior under their inherent authority and § 105(a). *Lowe v. Ransier (In re Nicole Gas Prod., Ltd.)*, 581 B.R. 843, 855 (B.A.P. 6th Cir. 2018). The bankruptcy courts' authority under § 105(a) to order noncompensatory monetary sanctions for contempt "is limited to sanctions that are necessary or appropriate to enforce the Bankruptcy Code." *In re Biery*, 543 B.R. at 298 (quoting *In re John Richards Homes Bldg. Co.*, 552 F. App'x at 415); *accord Franklin Credit Mgmt. Corp.*, 551 B.R. at 624. Additionally, aside from § 105(a), a bankruptcy court retains inherent sanction powers to fashion appropriate and limited remedies for improper conduct necessary to enforce the Bankruptcy Code. *In re Nicole Gas Prod., Ltd.*, 581 B.R. at 855; *In re Biery*, 543 B.R. at 299. Thus, Fay's argument on this point is rejected, a bankruptcy court is authorized to impose a sanction for violations of the discharge order. However, "bankruptcy courts lack the inherent power to award serious noncompensatory punitive sanctions." *In re John Richards Homes Bldg. Co.*, 552 F. App'x at 416.

Fay's alternative argument that the sanction was "serious" also fails. While there is no bright-line rule, the Sixth Circuit has provided guidance on the range of permissible sanctions. *See id.* (declining to draw a bright line for what constitutes a "serious" sanction "because the $2.8 million awarded" against an individual was "serious under any definition"); *see also*

---

[20]On cross-appeal, Fay argues the applicable standard of review is whether the bankruptcy court abused its discretion in holding Fay in contempt and imposing sanctions. However, whether a bankruptcy court has the *authority* to impose "punitive sanctions" is a question of law reviewed de novo. *Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 552 F. App'x 401, 404-05 (6th Cir. 2013).

*Franklin Credit Mgmt. Corp.*, 551 B.R. at 625 (implying that the bankruptcy court's imposition of a $5,000.00 sanction on a corporate defendant was "mild").

Guided by these holdings, the Panel concludes that the bankruptcy court did not abuse its discretion in sanctioning Fay.  The total amount of sanctions awarded against Fay, $10,300.00, is not "serious."  First, the Panel notes that the award is against a corporate entity, as in *Franklin Credit Management*, rather than against an individual, like in *John Richards Homes Building.* Second, the $10,300.00 amount is closer to the permissible "mild" sanction affirmed in *Franklin Credit Management* than the "serious" multi-million-dollar sanction in *In re John Richards Homes Building*.  Finally, the Panel notes that Ms. Berry informed Fay that personal liability for the debt was discharged, the Property had been foreclosed, and possession was relinquished. The bankruptcy court did not abuse its discretion in finding that this problem should have been remedied as soon as Ms. Berry called the facts to Fay's attention, and thus sanctions were warranted.

The amount that the bankruptcy court sanctioned Fay is comparable to other cases.  *See*, *e.g.*, *In re Fauser*, 545 B.R. at 915-16 ("These correspondences constitute willful and egregious violations of the discharge injunction.  Such violations are deserving of an award of punitive damages.  $500.00 per violation is an appropriate award to Fauser to discourage Green Tree from taking these actions in the future.").  The $1,000.00 sanction for each piece of communication was tied to and proportionate with the acts that were found to clearly violate the discharge order's injunction.  Additionally, proportionality of the bankruptcy court's $100.00 per day sanction must be viewed in light of Fay's failure to take effective corrective action in response to the discharge order, its obligations under the Bankruptcy Code, and the objectively clear proof the debt was discharged.  This portion of the award was proportionate when considering Fay's failure to take effective corrective action when confronted with the proof Ms. Berry provided of her discharge and the sale of the Property.  *See*, *e.g.*, *In re Ridley*, 572 B.R. at 366 ("[T]he Court believes that a sanction of $ 1,000 for each month it failed to reflect the correct status of Ridley's account post-discharge is necessary and appropriate."); Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, Restitution* § 2.8, at 132 (3d ed. 2018), cited in *Taggart*, 139 S. Ct. at 1801; *see also* Dobbs & Roberts, *Law of Remedies* § 2.8, at 142.  The Panel finds that

these sanctions awarded were "mild" and warranted given the circumstances of the case. Thus, the bankruptcy court did not abuse its discretion.

## CONCLUSION

For the reasons discussed above, the bankruptcy court's order is affirmed.